179 P.3d 309

Cody BACCUS, Plaintiff–Appellant,

v.

AMERIPRIDE SERVICES, INC., John Does I–V, Doe Corporations I–V, Defendants–Respondents.

No. 33528.

Supreme Court of Idaho.
Boise, January 2008 Term.

Feb. 15, 2008.

Simpson & Gauchay, Idaho Falls and Meyer and Williams, P.C., Jackson, WY, for appellant. Richard Meyer argued.

Stoel Rives, LLP, Boise, for respondent. Bradley Dixon argued.

W. JONES, Justice.

## I. FACTS

Plaintiff filed a Complaint and Jury Demand on June 8, 2005, seeking damages from AmeriPride. AmeriPride answered on July 28, 2005, and then moved for summary judgment on July 25, 2006. On August 8, 2006, Plaintiff submitted his Response to Defendant's Motion for Summary Judgment. The Honorable Kathryn A. Sticklen filed her Order Granting Summary Judgment on August 25, 2006. From this order, Baccus appeals to this Court.

Plaintiff was a computer network technician for Bechtel. On December 22, 2003, he allegedly slipped and fell in the southern entry of the premises of the Naval Reactor Facility where he worked for Bechtel. The floor was not carpeted, but ice melt was placed on it. However, the ice melt may have made the surface slicker. AmeriPride had contracted with Bechtel to, among other things, place mats at locations designated by Bechtel, including the location where plaintiff allegedly fell. Darwin Morrison was responsible for placing the mats at Bechtel on December 17, 2003. AmeriPride concedes that Morrison had no recollection of that delivery, and that no mat was on the floor of the southern entry at the Naval Reactor Facility on December 22, 2003.

Bechtel investigated the accident and described the incident as follows:

A computer network technician was assigned to repair a computer in the Central Training Building. The technician was carrying a tool bag over his right shoulder, a hydraulic bolt cutter in his right hand and a small bag of cookies in his left hand. The employee opened the inside left door of the double door with his left hand. When he stepped into the vestibule he slipped on the rubber floor and fell backwards striking his left wrist, elbow, shoulder, head and back. The employee was looking ahead to see if someone was entering the vestibule from the outside and did not notice that the hard rubber floor was covered with a film of liquid. The employee remembers crawling back through the inner doors where he waited for help to arrive.

NRF Security and Medical were notified at 1406 and responded. The INEEL Fire Department responded at 1414 with an ambulance. The employee was transported at 1430 to EIRMC. The employee was examined by the EIRMC Emergency Room (ER) Doctor. A CAT SCAN was taken of his head and X-rays were taken of his back. No broken bones were found. The employee was discharged at 2000 with prescriptions for pain and inflammation. The employee was still complaining about seeing spots when he left the ER. The Doctor told him this should clear in 24 hours. An NRF Manager inquired about drug interactions with the employee's current medications. The ER Doctor stated there should not be a problem. The employee had complaints about a previously injured shoulder. The ER Doctor suggested that the employee contact his Orthopedic Surgeon if the problem persisted.

Subsequent investigation by Environmental, Safety and Health Engineers found two parallel skid marks on the rubber floor material.

In the same report, the "critique leader" Eric Kuns concluded that the ice melt appeared to create slick surfaces; that the floor was noticeably slick; and that personnel pre-

viously noticed the slick surface but did not report it.

## II. STANDARD OF REVIEW

In *Meridian Bowling Lanes, Inc. v. Meridian Athletic Association, Inc.*, 105 Idaho 509, 670 P.2d 1294 (1983), this Court stated the applicable standard of review when reviewing a trial court's ruling on a motion for summary judgment:

> When a trial judge passes upon a motion for summary judgment and when this Court reviews the grant of a motion for summary judgment, the standard is the same—all facts and inferences are to be construed in a light most favorable to the nonmoving party and summary judgment under I.R.C.P. 56(c) is inappropriate if any genuine issue of material fact remains unresolved.

*Meridian Bowling*, 105 Idaho at 512, 670 P.2d at 1297.

■ "The burden of proving the absence of material facts is upon the moving party." *Lane Ranch Partnership v. City of Sun Valley*, 144 Idaho 584, 588, 166 P.3d 374, 378 (2007); *see also Petricevich v. Salmon River Canal Co.*, 92 Idaho 865, 868, 452 P.2d 362, 365 (1969).

## III. LEGAL FRAMEWORK

■ "No liability exists under the law of torts unless the person from whom relief is sought owed a duty to the allegedly injured party." *Vickers v. Hanover Constr. Co., Inc.*, 125 Idaho 832, 835, 875 P.2d 929, 932 (1994). Whether a duty was owed is a legal question over which this Court exercises free review. *Id.*

In *Brizendine v. Nampa Meridian Irrigation Dist.*, 97 Idaho 580, 548 P.2d 80 (1976), this Court defined the requirements for a cause of action based on negligence:

> "The elements of a cause of action based upon negligence can be summarized as (1) a duty, recognized by law, requiring a defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's

conduct and the resulting injuries; and (4) actual loss or damage."

*Brizendine*, 97 Idaho at 583, 548 P.2d at 83.

■ "[O]ne owes the duty to every person in our society to use reasonable care to avoid injury to the other person in any situation in which it could be reasonably anticipated or foreseen that a failure to use such care might result in such injury." *Coghlan v. Beta Theta Pi Fraternity*, 133 Idaho 388, 399, 987 P.2d 300, 311 (1999) (citations and emphasis removed). Several factors are considered when determining whether a duty existed:

> [T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

*Id.* (internal quotations omitted).

In *Turpen v. Granieri*, 133 Idaho 244, 985 P.2d 669 (1999), this Court discussed the nature of foreseeability in negligence cases:

> Foreseeability is a flexible concept which varies with the circumstances of each case. Where the degree of result (sic) or harm is great, but preventing it is not difficult, a relatively low degree of foreseeability is required. Conversely, where the threatened injury is minor but the burden of preventing such injury is high, a higher degree of foreseeability may be required. Thus, foreseeability is not to be measured by just what is more probable than not, but also includes whatever result is likely enough in the setting of modern life that a reasonable prudent person would take such into account in guiding reasonable conduct.

*Turpen*, 133 Idaho at 248, 985 P.2d at 673 (1999) (quoting *Sharp v. W.H. Moore Inc.*, 118 Idaho 297, 300–01, 796 P.2d 506, 509–10 (1990)).

Ordinarily, there is no affirmative duty to act, assist, or protect someone else. *Coghlan*, 133 Idaho at 399, 987 P.2d at 311. Such an affirmative duty "arises only when a special relationship exists between the parties." *Id.* Whether a special relationship exists is determined by evaluating "the sum total of those considerations of policy which lead the law to say that a particular plaintiff is entitled to protection." *Id.* (quoting W. Prosser, Law of Torts 333 (3d ed.1964)).

Even when an affirmative duty generally is not present, a legal duty may arise if "one voluntarily undertakes to perform an act, having no prior duty to do so." *Id.* at 400, 987 P.2d at 312 (quoting *Featherston v. Allstate Ins. Co.*, 125 Idaho 840, 843, 875 P.2d 937, 940 (1994)). In such case, the duty is to perform the voluntarily-undertaken act in a non-negligent manner. Id. But, "[w]hen a party assumes a duty by voluntarily performing an act that the party had no duty to perform, the duty that arises is limited to the duty actually assumed." *Martin v. Twin Falls School Dist. No. 411*, 138 Idaho 146, 150, 59 P.3d 317, 321 (2002). So, "[l]iability for an assumed duty ... can only come into being to the extent that there is in fact an undertaking." *Udy v. Custer County*, 136 Idaho 386, 389, 34 P.3d 1069, 1072–73 (2001) (voluntarily removing rocks from the highway on one occasion does not result in a duty to do it on future occasions, because such a holding "would be tantamount to holding that ... a permanent duty to remove obstructions from the highway [existed]"). Moreover, "past voluntary acts do not entitle the benefited party to expect assistance on future occasions, at least in the absence of an express promise that future assistance will be forthcoming." *Id.* at 390, 34 P.3d at 1073.

In addition, "[i]n order for a cause of action to arise in tort, Claimants must establish the breach of a tort duty, separate and apart from any duty allegedly created by the contract." *Vickers*, 125 Idaho at 835, 875 P.2d at 932. Furthermore, "negligent conduct and breach of contract are two distinct theories of recovery. Ordinarily, breach of contract is not a tort, although a contract may create the circumstances for the commission of a tort." *Just's Inc. v. Ar-*

*rington Constr. Co.*, 99 Idaho 462, 468, 583 P.2d 997, 1003 (1978). But, "[t]he mere negligent breach or non-performance of a contract will not sustain an action sounding in tort, in the absence of a liability imposed by law independent of that arising out of the contract itself." *Steiner Corp. v. American Dist. Telegraph*, 106 Idaho 787, 790, 683 P.2d 435, 438 (1984) (internal quotations omitted). Instead, "active negligence or misfeasance is necessary to support an action in tort based on a breach of contract; mere nonfeasance, even if it amounts to a willful neglect to perform the contract, is not sufficient." *Id.* (emphasis removed) (internal quotations omitted).

This Court in *City of Rexburg v. Madison County*, 115 Idaho 88, 764 P.2d 838 (1988) defined "malfeasance," "misfeasance," and "nonfeasance" as follows:

> Malfeasance is a wrongful act which the actor has no legal right to do, or any wrongful conduct which affects, interrupts, or interferes with performance of official duty, or an act for which there is no authority or warrant of law or which a person ought not to do at all, or the unjust performance of some act, which party performing it has no right, or has contracted not, to do.... "Misfeasance" is ... [t]he improper performance of some act which a man may lawfully do. "Nonfeasance" means the omission of an act which a person ought to do; "misfeasance" is the improper doing of an act which a person might lawfully do; and "malfeasance" is the doing of an act which a person ought not to do at all.

*Madison County*, 115 Idaho at 92, 764 P.2d at 842 (quoting BLACK'S LAW DICTIONARY 862, 902 (5th ed.1979)).

In *Udy v. Custer County*, 136 Idaho 386, 34 P.3d 1069 (2001), this Court explained that "nonfeasance which results in failure to eliminate a preexisting risk is not equivalent to nonfeasance which increases a risk of harm." *Udy*, 136 Idaho at 390, 34 P.3d at 1073 (internal quotations and citations omitted).

In *Just's*, this Court explained the difference between the purposes of contract law and tort law thusly:

The fundamental difference between tort and contract lies in the nature of the interests protected. Tort actions are created to protect the interest in freedom from various kinds of harm. The duties of conduct which give rise to them are imposed by the law, and are based primarily upon social policy, and not necessarily upon the will or intention of the parties.... Contract actions are created to protect the interest in having promises performed. Contract obligations are imposed because of conduct of the parties manifesting consent, and are owed only to the specific individuals named in the contract.

*Just's*, 99 Idaho, at 468, 583 P.2d at 1003 (quoting W. Prosser, Handbook of the Law of Torts, § 92 at 613 (4th ed.1971)).

## IV.  ANALYSIS

Plaintiff argues that AmeriPride had "a general duty to use reasonable care to prevent harm to Plaintiff." In support of his position, he maintains that

[f]ailing to place a safety mat after being paid to place it in a particular place and after admitting that it was foreseeable that someone would be injured if it was not so placed is a "situation in which it could be reasonably anticipated or foreseen that a failure to use such care might result in such injury."

Foreseeability, however, is not the only concern, since there generally is no affirmative duty to act. This case obviously involves the issue of whether an affirmative duty to act was present, since the issue is whether AmeriPride breached a duty by failing affirmatively to place a mat at the southern entry. Since the placing of mats is an affirmative act, a duty to place mats would qualify as an affirmative duty to act. Since this case concerns the issue of whether an affirmative duty to act exists, it necessarily concerns whether a special relationship existed between plaintiff and AmeriPride. However,

plaintiff has not argued that a special relationship existed between him and AmeriPride, and this Court therefore will not consider the issue.

■■■  Plaintiff instead argued for the first time in his Reply Brief that this Court should adopt the Restatement (Second) of Torts § 324A.[1] Because that issue was not raised before the Reply Brief, it too will not be considered. *See, Country Cove Development, Inc. v. May*, 143 Idaho 595, 601, 150 P.3d 288, 294 (2006) ("The issue was not raised before the reply brief and will not be considered"). Plaintiff therefore has failed to establish that a special relationship existed between him and AmeriPride, which means that he failed to allege facts that suggest the existence of a general duty of AmeriPride to Plaintiff.

■■■  As a result, plaintiff must allege facts sufficient to warrant a reasonable inference that AmeriPride assumed a duty of care. With this end in mind, plaintiff argued that a duty existed because AmeriPride's contract with Bechtel obligated it to place safety mats at the southern entry, and AmeriPride knew that the purpose of the placement of the mats was to protect the public by preventing falls.

■■■  A duty arises in the negligence context when one previously has undertaken to perform a primarily safety-related service; others are relying on the continued performance of the service; and it is reasonably foreseeable that legally-recognized harm could result from failure to perform the undertaking. The placement of safety mats in slippery areas is clearly a safety-related undertaking; the workers relied on AmeriPride's delivery of the mats; and plaintiff's fall-related injury is surely the *primary* injury that the mats were intended to prevent, which means that the injury was obviously foreseeable.

1. One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of reliance of the other or the third person upon the undertaking

It is true that AmeriPride's alleged inaction would qualify as nonfeasance rather than misfeasance. As this Court noted, though, there is a difference between "nonfeasance which results in failure to eliminate a preexisting risk [and] nonfeasance which increases a risk of harm." This case does not involve a failure to eliminate a preexisting risk because mats were routinely placed at the southern entry. Therefore, there was no preexisting risk, since AmeriPride needed only to maintain the southern entry's condition. AmeriPride's alleged failure to place a mat at the entry may have increased the risk of harm because it resulted in a mat-less southern entry where a mat normally would have existed. Had AmeriPride not agreed to place the mats at the entry, Bechtel likely would have found another company to fulfill that duty. Bechtel and its employees therefore were relying on AmeriPride to prevent the southern entry's conditions from becoming more hazardous than they would be without safety mats. So, AmeriPride induced Bechtel's reliance on AmeriPride's promise to replace the safety mats, which increased the risk that a Bechtel employee such as plaintiff could slip, fall, and sustain injury were the promise not kept.

■■■ Where a defendant has a duty independent of a contractual duty, such as in the present case where the defendant has affirmatively assumed a duty, it matters not whether the duty is breached through misfeasance or nonfeasance. The longstanding definition of negligence in Idaho is "the failure to do something which a reasonably careful person would do, or the doing of something a reasonably careful person would not do, under circumstances similar to those shown by the evidence...." IDJI 2.20. In the present case, therefore, since AmeriPride assumed the duty of placing mats at Bechtel for what was clearly a safety purpose and since the risk of harm to third parties was reasonably foreseeable, it is immaterial whether AmeriPride negligently performed its duties in an affirmative way or whether it simply failed to perform its duties. Its conduct would amount to negligence in either event.

Furthermore, the above-cited caselaw is inapplicable insofar as it stands for the proposition that past voluntary acts do not warrant an expectation of future assistance, since in this case there allegedly was an express promise that future assistance would be forthcoming via delivery of the safety mats. This case is also different from the above-cited cases because it involves a situation in which the allegedly neglected duty would have been performed by someone else if AmeriPride had not promised to fulfill the duty. The same cannot be said of a Good Samaritan who altruistically removes stones from a road. Therefore, AmeriPride affirmatively accepted the duty to replace the safety mats at Bechtel, and the district court erred by concluding that AmeriPride had no duty to replace Bechtel's mats.

■■■ Finally, AmeriPride improperly argued that its alleged "failure to perform a contractual duty is an insufficient basis for a tort claim." That rule does not apply to these facts. As noted, "[c]ontract obligations are imposed because of conduct of the parties manifesting consent, and are owed only to the specific individuals named in the contract." *Just's*, 99 Idaho at 468, 583 P.2d at 1003. AmeriPride has not alleged that plaintiff was named in the contract. Plaintiff should not be left without a remedy simply because AmeriPride had duties under a contract to which plaintiff was not a party. The fact of the matter is that AmeriPride was under a legal duty to prevent foreseeable harm once it promised to place mats at the southern entry, and AmeriPride cannot immunize itself from this duty by entering into a contract with someone else. AmeriPride's duty of care, if any, arose not by virtue of the fact that it had contractual duty to Bechtel; rather, the contract was merely the means by which AmeriPride assumed a legal duty of care to third persons.

■■■ The next issue is whether Summary Judgment was justified on the basis that the issue of breach could be determined as a matter of law.

In the district court's Memorandum Decision and Order, it stated that

AmeriPride argues that, even if a duty is assumed, Baccus had no evidence of a breach of the duty by AmeriPride since there is no evidence that AmeriPride failed to deliver and place the mat....

The only admissible evidence is that the mat was missing and was not apparently located later.... The mere fact that an accident happened is not enough to sustain a claim of negligence.

Plaintiff provides the following circumstantial evidence relevant to breach, i.e., that Morrison failed to place the mat:

1) The location of Plaintiff's injury was the last stop on Morrison's route at Bechtel

2) Morrison often ran out of mats before arriving at the location where Plaintiff was injured

3) No safety mat was present when Plaintiff fell

4) No mat was ever found after the incident

Reasonable minds could differ regarding which inferences to draw from the above evidence. Additionally, AmeriPride argues that it had no control over the mats once they were placed and that during the time it performed its contract, there were several occasions on which Bechtel employees moved mats or for other reasons mats were displaced by third parties for whom AmeriPride was not responsible. It is clear, therefore, that the question of whether Ameripride breached its duties is a question of fact for the jury and should not have been ruled upon as a matter of law on the motion for summary judgment.

## V. CONCLUSION

For the foregoing reasons, this Court vacates the district court's ruling, and this case is remanded for further proceedings consistent with this opinion.

Chief Justice EISMANN, Justices R. BURDICK, J. JONES and HORTON, concur.