## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 40625

AMERICAN BANK, a Montana banking corporation,

    Plaintiff-Cross Defendant,

v.

BRN DEVELOPMENT, INC.,

    Defendant-Cross Defendant-
    Cross Claimant-Appellant,

and

TAYLOR ENGINEERING, INC.,

    Defendant-Third Party Plaintiff-
    Cross Defendant-Respondent,

and

BRN INVESTMENTS, LLC, an Idaho limited liability company; LAKE VIEW AG, a Liechtenstein company; BRN-LAKE VIEW JOINT VENTURE, an Idaho general partnership; ROBERT LEVIN Trustee for the ROLAND M. CASATI FAMILY TRUST, dated June 5, 2008; RYKER YOUNG, Trustee for the RYKER YOUNG REVOCABLE TRUST; MARSHALL CHESROWN, a single man; THORCO, INC., an Idaho corporation; CONSOLIDATED SUPPLY COMPANY, an Oregon corporation; WADSWORTH GOLF CONSTRUCTION COMPANY OF THE SOUTHWEST, a Delaware corporation; THE TURF CORPORATION, an Idaho corporation; POLIN & YOUNG CONSTRUCTION, INC., an Idaho corporation; PRECISION IRRIGATION, INC., an Arizona corporation; and SPOKANE WILBERT VAULT CO., a

Boise, November 2014 Term

2015 Opinion No. 76

Filed: August 20, 2015

Stephen Kenyon, Clerk

Washington corporation, d/b/a WILBERT
PRECAST,

 Defendants-Cross Defendants,

and

IDAHO ROOFING SPECIALIST, LLC, an
Idaho limited liability company;
INTERSTATE CONCRETE & ASPHALT
COMPANY, an Idaho corporation;
CONCRETE FINISHING, INC., an Arizona
corporation,

 Cross Defendants,

and

STRATA, INC., an Idaho corporation; and
SUNDANCE INVESTMENTS, LLP, a
limited liability partnership,

 Third-Party Defendants,

and

ACI NORTHWEST, INC., an Idaho
corporation,

 Third Party Defendant-Cross Claimant.

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Hon. John P. Luster, District Judge.

The judgment of the district court is <u>affirmed</u>.

Layman Law Firm, Spokane, Washington, for appellant. Bradley C. Crockett argued.

Witherspoon Kelley, Coeur d'Alene, for respondent. Mark A. Ellingsen argued.

HORTON, Justice.

In a foreclosure action brought against BRN Development, Inc. (BRN), BRN brought a cross-claim against Taylor Engineering, Inc. (Taylor), asserting negligence. Following a court trial, the district court held that Taylor was not liable to BRN. BRN appeals from that decision. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the failed Black Rock North Development project undertaken by BRN in Coeur d'Alene. BRN was formed by Marshall Chesrown, who served as CEO, to develop a high-end 325-unit residential and golf course community on the west side of Lake Coeur d'Alene. The project was known as Black Rock North. American Bank was the lender for this project.

The project required that BRN obtain a zone change and approval of a planned unit development (PUD) from Kootenai County. To that end, in 2005 BRN retained various entities to help secure approval for the development. BRN hired Kyle Capps as the project manager and vice-president of site development and maintenance. BRN hired the Layman Law Firm for legal services and the Design Workshop to design the master plan and lot layout. BRN entered into an oral contract with Taylor in the summer of 2005 to provide civil engineering services for the project.

Taylor provides civil engineering and land-use planning services. Ron Pace is an engineer and part owner of Taylor, and served as the main contact with BRN on the Black Rock North project. Taylor, through Pace, prepared applications, attended hearings, and served with Capps as BRN's contact with the county and various agencies involved in obtaining approval for the project.

By 2007, portions of the Black Rock North golf course were complete but the residential lots had not yet been developed. In the face of a deteriorating real estate market, BRN determined that it was necessary to mothball the project in order to save money. In order to preserve the sizeable investment that BRN had made in obtaining a zone change and preliminary approval for the PUD, BRN's primary concern was securing the status of the PUD approval.

In January of 2008, BRN held a meeting to discuss suspending the project. Chesrown requested that Taylor attend the meeting to discuss platting and the 2008 work schedule, with a focus on "cash flow considerations." Pace attended this meeting at Capps' request. After the meeting, BRN proceeded based upon its understanding that it was required to record a final plat

by May 29, 2009, in order to vest its rights in the PUD. To do so, BRN spent more than $7 million on the construction of additional infrastructure that it believed had to be completed in order to record the final plat.

The work continued through 2008 and BRN began to experience serious financial distress. By the spring of 2009, BRN owed Taylor $150,000. Taylor recorded a lien against the property in January of 2009. Despite this, Capps and Pace continued to work together on the project with BRN.

By April of 2009, BRN had defaulted on the loan from American Bank, and American Bank initiated foreclosure proceedings. American Bank named BRN and Taylor, along with other entities claiming interests in the property, as defendants in the foreclosure action. The numerous claims relating to financing, materials, services and labor related to the Black Rock project spawned significant litigation. This Court has previously addressed one such dispute in *American Bank v. Wadsworth Golf Construct. Co. of the Sw.*, 155 Idaho 186, 307 P.3d 1212 (2013).

On May 18, 2009, Taylor's attorney sent a letter to BRN, demanding that BRN pay $177,247.08 for Taylor's services. The letter stated that Taylor "has been very involved with the survey, design, and preliminary plat approval process for this property since 2005" and that upon payment of the amounts due, Taylor would "complete the necessary documents" and request the necessary signatures from the county and the districts involved to obtain the final PUD approval. The letter continued: "We are advised that if the final subdivision approval is not completed and recorded by May 29, 2009, the PUD and preliminary plat approval will expire, the PUD and plat will not vest in the recorded ownership to the real property involved, and the property will revert to its prior zoning and density." This statement was erroneous; it is undisputed that the final plat did not need to be recorded by May 29 in order to vest the PUD.

After receiving Taylor's demand letter, BRN learned that it was not necessary to record the final plat. Chesrown's attorney responded to Taylor and correctly observed that the PUD would remain vested and that the preliminary plat would not expire if the final plat was not recorded by May 29, 2009.

As the American Bank litigation progressed, Taylor brought a cross-claim against BRN alleging breach of contract and unjust enrichment based on BRN's failure to pay the sums that Taylor claimed were owed for its services. Taylor also sought to foreclose its lien on the BRN

4

property. BRN responded with a cross-claim against Taylor alleging professional negligence, negligent and intentional misrepresentation, and failure to disclose. The district court separated the claims between Taylor and BRN from the remainder of the American Bank litigation.

After dismissing BRN's negligent misrepresentation claim, the district court granted Taylor's motion for partial summary judgment as to BRN's claims for intentional misrepresentation and failure to disclose. The district court then granted Taylor's motion for summary judgment on its breach of contract claim, awarding Taylor a judgment against BRN in the principal sum of $153,448.77 plus pre-judgment interest.

BRN then moved for partial summary judgment, asking the district court to rule as a matter of law that *if* Taylor provided erroneous advice as to what needed to be done to vest the PUD, then the special relationship exception to the economic loss rule would apply. The district court denied this motion, explaining that the existence of a special relationship turned on factual questions that needed to be resolved at trial and that BRN's request was "inappropriate" because BRN was "essentially seeking an advisory opinion. . . ."

Taylor and BRN then reached a partial settlement and stipulated that the only issue to be decided by the court was BRN's claim that Taylor was negligent in providing incorrect land-use planning and engineering services and advice related to the project's PUD, plats, and other entitlements.

The case proceeded to trial without a jury in May of 2012. There, BRN claimed that when Taylor undertook engineering responsibilities for the project, it took the lead role in providing planning services and that Taylor erroneously informed BRN that the final plat needed to be recorded in order to vest the PUD entitlement. As the district court had previously determined that BRN's claimed damages were entirely economic losses, BRN contended that there was a special relationship between Taylor and BRN.

Following the trial, the district court issued a memorandum decision on BRN's cross-claim. In that decision, the district court held that BRN's claim was not an action for professional engineer malpractice. The district court reasoned that while engineering is a professional service, provision of land-use planning advice is not, as it does not require application of engineering principles. Thus, the district court determined that the general duty of care applied in negligence cases was the governing legal standard.

5

The district court noted that "[t]here was never any written agreement generated between the parties, nor was there offered into evidence any specific oral terms that clearly defined Taylor's roles and responsibilities on the project." Further, "a number of individuals and entities have done planning work on the BRN project" making it unclear "who, if anyone, was engaged to take the lead in providing land-use planning on the project." The district court found that "[t]he evidence does not establish that Taylor entered into an oral agreement with BRN to perform land-use planning services on the project." The district court concluded that the "role of lead land-use planner was never clearly defined by the parties" and the course of conduct between the parties showed "that land planning was a team effort." Significantly, the district court found that although BRN may have been under the impression that Taylor was providing advice on the subject, BRN failed to prove that Taylor advised BRN that it was necessary to record the final plat in order to vest the PUD entitlement.

The district court further concluded that there was no special relationship between Taylor and BRN. This finding, coupled with application of the economic loss rule, meant that Taylor owed no duty to protect BRN from purely economic losses. Based upon its twin conclusions that Taylor did not breach a duty to BRN and that BRN's claims were barred by the economic loss rule, the district court determined that Taylor was entitled to judgment in its favor on BRN's cross-claim. The district court entered its final judgment on November 20, 2012. BRN timely appealed.

## II. STANDARD OF REVIEW

This Court reviews a district court's conclusions following a bench trial to ascertain "whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law." *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009); *Stephen v. Sallaz & Gatewood, Chtd.*, 150 Idaho 521, 525, 248 P.3d 1256, 1260 (2011). "Since it is the province of the trial court to weigh conflicting evidence and testimony and to judge the credibility of witnesses, this Court will liberally construe the trial court's findings of fact in favor of the judgment entered" and "will not set aside a trial court's findings of fact unless the findings are clearly erroneous." *Borah*, 147 Idaho at 77, 205 P.3d at 1213; I.R.C.P. 52(a). "This Court exercises free review over matters of law." *Id.*

## III. ANALYSIS

**A. This Court will not review the district court's denial of BRN's motion for partial summary judgment.**

6

BRN asks this Court to review the district court's denial of its partial summary judgment motion concerning the applicability of the special relationship exception to the economic loss rule. BRN moved for summary judgment asking the district court "to rule as a matter of law that if Taylor provided the disputed advice concerning what was necessary to vest the PUD, the services involved in rendering such advice come within the special relationship exception to the economic loss rule."

"It is well settled in Idaho that '[a]n order denying a motion for summary judgment is an interlocutory order from which no direct appeal may be taken.' " *Garcia v. Windley*, 144 Idaho 539, 542, 164 P.3d 819, 822 (2007) (alteration in original) (quoting *Dominguez v. Evergreen Res., Inc.*, 142 Idaho 7, 13, 121 P.3d 938, 944 (2005)); *see* I.A.R. 11. "[A]n order denying a motion for summary judgment is not subject to review—even after the entry of an appealable final judgment." *Dominguez*, 142 Idaho at 13, 121 P.3d at 944; *see also Lewiston Indep. Sch. Dist. No. 1 v. City of Lewiston*, 151 Idaho 800, 808, 264 P.3d 907, 915 (2011) (explaining that this Court does not review denials of summary judgment after judgment is rendered on the merits); *Hunter v. State, Dep't of Corr.*, 138 Idaho 44, 46, 57 P.3d 755, 757 (2002) ("An order denying a motion for summary judgment is not an appealable order itself, nor is it reviewable on appeal from a final judgment.").

We have consistently explained the rationale for this rule:

> [B]y entering an order denying summary judgment, the trial court merely indicates that the matter should proceed to trial on its merits. *The final judgment in a case can be tested upon the record made at trial, not the record made at the time summary judgment was denied. Any legal rulings made by the trial court affecting that final judgment can be reviewed at that time in light of the full record.* This will prevent a litigant who loses a case, after a full and fair trial, from having an appellate court go back to the time when the litigant had moved for summary judgment to view the relative strengths and weaknesses of the litigants at that earlier stage. Were we to hold otherwise, one who had sustained his position after a fair hearing of the whole case might nevertheless lose, because he had failed to prove his case fully on the interlocutory motion.

*Garcia*, 144 Idaho at 542, 164 P.3d at 822 (alternation in original) (quoting *Miller v. Estate of Prater*, 141 Idaho 208, 211, 108 P.3d 355, 358 (2005)). We are not convinced that we should abandon this rule. To the contrary, we deem it prudent to continue to "strictly adhere" to our rule precluding appellate review of the denial of summary judgment when the case has subsequently gone to the finder of fact. *Hennefer v. Blaine Cnty. Sch. Dist.*, 158 Idaho 242, 249, 346 P.3d 259,

266 (2015). We therefore decline to review the district court's denial of BRN's motion for partial summary judgment.

**B. The district court did not err by concluding that BRN failed to meet its burden of proving its claims against Taylor.**

The district court's decision did not explicitly state that it found that Taylor had not breached its duty of care to BRN. However, a careful reading of that decision leads us to the inescapable conclusion that this is precisely what the district court found. In its decision, the district court stated:

> The evidence does not establish that Taylor entered into an oral agreement with BRN to perform land-use planning services on the project. This is demonstrated by a lack of a clear understanding between the parties regarding this responsibility. BRN may have been under the impression that land-use planning was part of Taylor's role, however, such an impression does not give rise to an obligation under the contract.
> . . . .
> Taylor owed a duty of reasonable care in providing non engineering services in its work with BRN regardless of whether those services were provided under the contract or they were services assumed by Taylor. While it is clear that Taylor took on certain planning-related duties[,] it has not been established from the evidence that Taylor specifically advised BRN that a final plat had to be recorded to vest the PUD entitlement.

The district court further explained that because BRN sought purely economic damages, Taylor would not be entitled to recover unless it proved the existence of an exception to the economic loss rule.

BRN contends that the district court erred in these decisions. We find that substantial evidence supports the district court's conclusion that Taylor did not breach its duty of care to BRN. As this is fatal to BRN's claim, we do not reach BRN's arguments regarding the special relationship exception to the economic loss rule.

> To establish a cause of action for negligence, the plaintiff must demonstrate:
>
> (1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." *Nation v. State, Dep't of Corr.*, 144 Idaho 177, 189, 158 P.3d 953, 965 (2007) (quoting *O'Guin v. Bingham Cnty.*, 142 Idaho 49, 52, 122 P.3d 308, 311 (2005)). "Whether a duty exists is a question of law over which this Court exercises free review." *Id.* at 189, 158 P.3d at 965.

*Cumis Ins. Soc'y, Inc. v. Massey*, 155 Idaho 942, 947–48, 318 P.3d 932, 937–38 (2014). "[O]ne owes the duty to every person in our society to use reasonable care to avoid injury to the other

8

person in any situation in which it could be reasonably anticipated or foreseen that a failure to use such care might result in injury." *Baccus v. Ameripride Servs. Inc.*, 145 Idaho 346, 349, 179 P.3d 309, 312 (2008) (alternation in original) (quoting *Coghlan v. Beta Theta Pi Fraternity*, 133 Idaho 388, 399, 987 P.2d 300, 311 (1999)). This Court has explained that "a contract may create the circumstances for the commission of a tort." *Id.* at 350, 179 P.3d at 313 (quoting *Just's Inc. v. Arrington Constr. Co.*, 99 Idaho 462, 468, 583 P.2d 997, 1003 (1978)). However, "the mere negligent breach or non-performance of a contract will not sustain an action sounding in tort, in the absence of a liability imposed by law independent of that arising out of the contract itself." *Gagnon v. Western Bldg. Maint., Inc.*, 155 Idaho 112, 115, 306 P.3d 197, 200 (2013) (quoting *Baccus*, 145 Idaho at 350, 179 P.3d at 313).

Although it is undisputed that Taylor undertook to perform a number of engineering tasks associated with the project, including utility design, boundary surveying, topographical surveying, construction staking, and construction observation, Taylor consistently maintained that it did not agree or undertake to provide land-use planning advice relating to the vesting of the PUD. BRN did not provide evidence that there was an express agreement, oral or written, that Taylor would provide land-use planning advice.

The district court found that Taylor had voluntarily undertaken to perform certain land-use planning services. Taylor prepared some applications, attended hearings, and prepared minutes in the PUD approval process. Clearly, to the extent Taylor undertook to perform land-use services, it had a duty to perform those services in a non-negligent manner. However, Taylor's duties were limited to those it actually assumed.

There is substantial evidence to support the district court's finding that Taylor did not provide land-use planning advice regarding the vesting of the PUD. Although Capps maintained that Taylor provided the erroneous advice regarding the necessity of recording a final plat at the 2008 meeting, Pace maintained that Capps and other individuals from BRN told him that a final plat was required. Pace explained that the statement in the demand letter from Taylor's attorney to the effect that final plat approval was required by May 29, 2009, was based upon what Capps had told him.

This is simply a matter of conflicting testimony. It is the district court's role, not ours, to weigh conflicting evidence and judge witness credibility. *State, Dep't of Transp. v. Grathol*, 158 Idaho 38, 45, 343 P.3d 480, 487 (2015). We will uphold the trial court's factual findings if they

9

are based upon substantial evidence, even if the evidence is conflicting. *Big Wood Ranch, LLC v. Water Users' Ass'n of Broadford Slough & Rockwell Bypass Lateral Ditches, Inc.*, 158 Idaho 225, 230, 345 P.3d 1015, 1020 (2015). Pace's testimony constituted substantial evidence that Taylor was not the source of the erroneous information regarding the necessity of final plat approval.

"[A] legal duty may arise if 'one voluntarily undertakes to perform an act, having no prior duty to do so.'" *Baccus*, 145 Idaho at 350, 179 P.3d at 313 (quoting *Coghlan*, 133 Idaho at 400, 987 P.2d at 312). "In such a case, the acting party has a duty to perform that act in a non-negligent manner." *Beers v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, 155 Idaho 680, 688, 316 P.3d 92, 100 (2013). The district court found there was no evidence that Taylor undertook to provide advice regarding the necessity of securing final plat approval. We can find no error in this decision.

## C.  Taylor is entitled to attorney fees on appeal.

Both parties request attorney fees on appeal pursuant to Idaho Code section 12-120. BRN also requests attorney fees on appeal under Idaho Code section 12-121. As BRN has not prevailed in this appeal, its request for an award of attorney fees is denied.

Taylor requests attorney fees on appeal pursuant to Idaho Code section 12-120(3), contending that its provision of engineering services to BRN constitutes a commercial transaction. "The term 'commercial transaction' is defined to mean all transactions except transactions for personal or household purposes." I.C. § 12-120(3). "[T]he commercial transaction must be integral to the claim and constitute a basis on which the party is attempting to recover." *Clayson v. Zebe*, 153 Idaho 228, 236, 280 P.3d 731, 739 (2012) (quoting *Great Plains Equip., Inc. v. Nw. Pipeline Corp.*, 136 Idaho 466, 471, 36 P.3d 218, 223 (2001)). Here, the parties' claims against each other arose from Taylor's provision of services in connection with the Black Rock North Development. These services were not for personal or household purposes. As Taylor has prevailed in this appeal, Taylor is entitled to an award of attorney fees pursuant to Idaho Code section 12-120(3).

## IV. CONCLUSION

We affirm the judgment of the district court and award attorney fees and costs on appeal to Taylor.

10

Chief Justice J. JONES, Justices EISMANN, BURDICK and Justice Pro Tem WALTERS, **CONCUR**.