# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 47917

| | |
|---|---|
| VICTOR DUPUIS, ) <br> ) <br>   Plaintiff-Appellant, ) <br> ) <br> v. ) <br> ) <br> EASTERN IDAHO HEALTH SERVICES, ) <br> INC., an Idaho corporation, dba EASTERN ) <br> IDAHO REGIONAL MEDICAL CENTER, ) <br> ) <br>   Defendant-Respondent, ) <br> ) <br> and ) <br> ) <br> JOHN/JANE DOES I-V, whose true identities ) <br> are presently unknown, ) <br> ) <br>   Defendants. ) | Boise, February 2021 Term <br><br> Opinion Filed: April 15, 2021 <br><br> Melanie Gagnepain, Clerk |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Joel Tingey, District Judge.

The decision of the district court is <u>reversed</u>, the judgment is <u>vacated</u>, and the case is <u>remanded</u>.

Johnson & Monteleone, Boise, for appellant, Victor Dupuis. Shannon N. McCarthy argued.

R. William Hancock & Ryan B. Peck, Pocatello, for respondent, Eastern Idaho Health Services, Inc. R. William Hancock argued.

_____

STEGNER, Justice.

At its core, this case presents us with a fundamental, but previously unanswered, question: what duty is owed by a hospital to someone who is on its premises solely to visit one of its patients? For the reasons set forth below, we conclude the duty owed is one of reasonable care, and for that reason we reverse the district court's decision that conflicts with this conclusion.

This is an appeal from the entry of summary judgment against Victor Dupuis (Dupuis) in a premises liability case brought against a hospital, Eastern Idaho Regional Medical Center.

1

Dupuis was visiting his hospitalized wife in January 2017 when he slipped and fell on ice in the hospital's parking lot. Dupuis sued the hospital, alleging inadequate snow and ice removal in the parking lot caused him to fall. Dupuis argued that the hospital had breached the duty of care it owed to him as an invitee.

Eastern Idaho Regional Medical Center moved for summary judgment, arguing that Dupuis was merely a licensee, not an invitee, and that even if Dupuis were an invitee, no duty was owed to him or breached by the hospital. The district court granted the hospital's motion for summary judgment, first holding that Dupuis was a licensee. The district court then determined that the hospital did not have superior knowledge of the dangerous conditions over that of Dupuis, and, therefore, the hospital did not breach any duty owed to Dupuis.

Dupuis now appeals, asserting that summary judgment was inappropriate. Dupuis argues that the district court erred in determining that he was a mere licensee, rather than an invitee, and that even if he were a licensee, the hospital assumed and subsequently breached a duty of care to keep the property in reasonably safe condition. For the reasons set out below, we reverse the district court's grant of summary judgment, vacate the judgment entered, and remand the case for further proceedings.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background.

1. Eastern Idaho Regional Medical Center's snow removal agreement with B&K Professional Services and weather conditions on January 24, 2017.

Eastern Idaho Regional Medical Center (EIRMC) is a hospital in Idaho Falls, Idaho. EIRMC does not perform its own snow removal and ice abatement; instead, it contracts with a third party for these services.

At the time of the events giving rise to this case, EIRMC contracted with B&K Professional Services (B&K) to provide snow removal and ice abatement services. The requirements of this particular contract reflected a rebid in 2013 when EIRMC's operations director sought to reduce its costs and decrease the services provided by B&K. B&K reduced its bid and also reduced its use of ice melt and pre-treatment in EIRMC's parking lots. In addition, under this agreement, after removing snow and distributing ice melt, B&K would not wait for the ice melt to react or otherwise monitor the surfaces. B&K would instead leave the facility and rely on Plant Operations at EIRMC to monitor conditions, and if surfaces were icy or more snow removal was required, a facility safety officer or plant operations personnel would contact B&K, which would in turn send an

2

employee to perform the requested work. Brent Martin (Martin) owned B&K and provided deposition testimony that EIRMC had in the past notified him of icy conditions, prompting B&K to return and remedy the situation.

Between January 23 and 24, 2017, Idaho Falls experienced a significant amount of snowfall, receiving nearly 10 inches of snow over a two-day period. B&K provided approximately 17 combined hours of work to EIRMC on January 24, 2017. B&K plowed, shoveled, and applied ice melt to EIRMC's sidewalks and parking lots. Martin finished the snow removal work around 6:00 or 6:30 p.m. but was not called back that evening. Dupuis slipped and fell in EIRMC's parking lot later that evening.

2. Events surrounding Dupuis' slip and fall.

On the morning of January 24, 2017, Victor Dupuis (Dupuis) brought his wife Carol to the emergency room at EIRMC after she complained of chest pains throughout the night. She underwent tests and was admitted to the cardiac unit for a suspected heart attack. After the Dupuis' daughter arrived to stay with Carol, Dupuis left briefly to retrieve their son. Around 6:00 p.m., Dupuis returned to the hospital with his son, parking the vehicle in EIRMC's parking lot near the hospital's main entrance.

According to Dupuis' son, they walked slowly to the main entrance because the parking lot was very slick. Dupuis' son stated during his deposition that at the time they entered the hospital, the temperature was in the high 30s or low 40s. Dupuis and his son visited Carol in the cardiac unit for a few hours, and left via the same hospital entrance around 8:30 p.m. It was now dark, colder, and windy.

When Dupuis and his son were in the parking lot, about 50 or 60 feet from their car, Dupuis' left foot slid out from under him, and he fell to the ground. According to Dupuis' son, the parking lot did not have any ice melt on it, and the spot where Dupuis fell consisted of black ice. Someone else called the hospital to report that an individual had slipped and fallen in the parking lot. EIRMC nurses arrived with a wheelchair, and Dupuis was taken to the emergency room, where he was treated for a broken hip. During Dupuis' recovery for his broken hip, he contracted sepsis, leading to an extended period of treatment and care.

3

**B. Procedural History.**

In November 2018, Dupuis filed a complaint and demand for jury trial against defendants Eastern Idaho Health Services, Inc., dba EIRMC, and several John/Jane Does. EIRMC answered the complaint in December 2018.

1. Summary judgment motion.

On January 15, 2020, after conducting discovery, EIRMC moved for summary judgment. The motion was accompanied by a memorandum and several supporting declarations.[1] EIRMC argued that Dupuis was only a licensee on the premises, and therefore, EIRMC owed him no duty to inspect the parking lot. Alternatively, EIRMC argued that even if Dupuis were an invitee, the ice patch was not a condition of which EIRMC had actual or constructive notice, or a recurring or continuing condition caused by EIRMC's operating methods. EIRMC further contended that even if the ice patch constituted a dangerous condition triggering a duty, EIRMC's snow removal practices were a reasonable response to the danger.

Dupuis responded, arguing that in addition to the premises liability theory, EIRMC was liable under common law negligence because it had assumed a duty of care by entering into a contract for snow removal with B&K. Dupuis also argued that under premises liability, he was an invitee, and that EIRMC breached the duty of care owed to an invitee because it knew or should have known about the dangerous condition in the parking lot. Finally, Dupuis contended that even if he were a licensee, EIRMC breached the duty owed a licensee because it knew or should have known of the black ice in the parking lot.

In response, EIRMC argued that the only applicable theory was premises liability, not ordinary negligence. EIRMC again asserted that Dupuis was a licensee under Idaho law, and that his status as licensee was dispositive because the icy conditions were not concealed and were reasonably discoverable to Dupuis.

2. Motion to Strike.

Concurrently with his opposition to EIRMC's motion for summary judgment, Dupuis disclosed two expert witnesses, including Bud York (York), the owner of Superior Sweeping & Snow Removal. York's qualifications included 23 years of snow and ice removal, including 15 years owning his own company. York reviewed the contract between B&K and EIRMC, as well as the 2013 letter in which B&K memorialized its agreement to reduce its use of de-icer to decrease

---

[1] EIRMC provided declarations from counsel and from Martin, the owner of B&K.

its bid. York ultimately opined that EIRMC was not only responsible, but negligent in its de-icing procedures because it curtailed B&K's services for budgetary reasons. York also stated that EIRMC "should have checked for ice and took [sic] action as soon as the snow plowing was completed."

Dupuis later supplemented York's opinion to include a list of the documents York had reviewed. York's opinion remained unchanged. The supplement was filed four days after the stipulated deadline to disclose expert witnesses.

EIRMC moved to strike York's opinions from consideration at summary judgment on the basis that the supplemental disclosure was untimely and therefore should be stricken. Turning to the merits of York's opinion, EIRMC argued that York had failed to provide foundation for his opinions by clearly identifying what documents he had reviewed. EIRMC also contended that York's opinions were speculative, conclusory, and unsubstantiated.

Dupuis opposed EIRMC's motion to strike, arguing that exclusion of the evidence was an inappropriate sanction even if the late disclosure merited sanctions. Dupuis asserted that York's opinion had not changed between the initial disclosure and the supplemental disclosure. Dupuis also asserted that York's opinion would be helpful to the trier of fact, and that EIRMC's objections constituted an attack on the weight of the evidence, rather than York's qualifications.

In response, EIRMC argued that it was asking the court to perform its gatekeeping function under Idaho Rules of Evidence 104(a) and 702, not asking the court to inappropriately weigh credibility.

3. Summary judgment decision.

A hearing was held dealing with both the motion for summary judgment and the motion to strike York's opinion. The district court took both issues under advisement and ultimately entered a memorandum decision and order granting EIRMC's motion for summary judgment. At the outset, the district court reasoned that "liability in this matter is based upon the doctrine of premises liability." The district court held that EIRMC did not assume a duty in addition to its duty as a landowner. The district court turned to Dupuis' premises liability theory, concluding first that Dupuis was a licensee because he was not "conferring a business, commercial, monetary, or other tangible benefit to EIRMC or . . . personally was there for a purpose connected with EIRMC's business." The district court held that "[b]ased on the duty owed to a licensee, Dupuis could only recover in this action if the dangerous condition in the parking lot was unknown to Dupuis, and

EIRMC had a greater or superior knowledge of the dangerous condition." The district court then held that EIRMC did not breach any duty because "as a matter of law Dupuis' knowledge of the condition of the parking lot was at least equal to the knowledge of EIRMC." The district court granted summary judgment against Dupuis. The district court did not address EIRMC's motion to strike.

Dupuis timely appealed.

## II. STANDARD OF REVIEW

> This Court employs the same standard as the district court when reviewing rulings on summary judgment motions. *La Bella Vita, LLC v. Shuler*, 158 Idaho 799, 804–05, 353 P.3d 420, 425–26 (2015) (citing *Wesco Autobody Supply, Inc. v. Ernest*, 149 Idaho 881, 890, 243 P.3d 1069, 1078 (2010)). "The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a).

*Packer v. Riverbend Commc'ns, LLC*, 167 Idaho 205, 468 P.3d 1283, 1287 (2020) (quoting *Eldridge v. West*, 166 Idaho 303, 308, 458 P.3d 172, 177 (2020)).

"The burden of establishing the absence of a genuine issue of material fact rests at all times with the party moving for summary judgment." *Davison v. Debest Plumbing, Inc.*, 163 Idaho 571, 574, 416 P.3d 943, 946 (2018) (quoting *Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 556, 212 P.3d 982, 986 (2009)).

## III. ANALYSIS

### A. A hospital visitor is an invitee.

The district court concluded that Dupuis was a licensee. The district court first observed that it was a matter of first impression whether a hospital visitor is an invitee or licensee. The district court then discussed the definition of an invitee in Idaho, and reasoned:

> There is no dispute in the record that the reason Dupuis was at EIRMC that day was to visit his wife. He was not admitted into EIRMC for any reason and he was not being treated by EIRMC for any condition. The Court is not persuaded by Dupuis' argument that by visiting his wife, it could reasonably be said that he was conferring a business, commercial, monetary, or other tangible benefit to EIRMC or that he personally was there for a purpose connected with EIRMC's business. He was there for his wife and not for EIRMC or EIRMC's business.

The district court then noted the jurisdictional split on whether hospital visitors are invitees or licensees, and reasoned as follows,

> the rationale appears to be that a hospital must expect that its patients will have visitors and that no hospital would be patronized by the public if it did not permit

6

visitors. However, permitting visitors is not the equivalent of inviting visitors. Dupuis was on the premises not for the purpose of conferring a benefit on EIRMC, but because EIRMC permitted him to enter the premises to visit a patient. In contrast to an invitee, there was no general invitation to Dupuis to enter the premises. Had Dupuis decided to tour the facility on his own he likely would be considered a trespasser. His permission to be on the premises was qualified and limited to visiting a patient. It is the [c]ourt's opinion that the facts of this matter create a licensee status akin to a social guest.

On appeal, Dupuis argues that he was an invitee. Dupuis contends that the Court's recent decision in *Packer v. Riverbend Communications*, 167 Idaho 205, 468 P.3d 1283 (2020), shows that the district court erred when it focused only on the second way of establishing invitee status. Dupuis argues that he was present for a purpose connected with EIRMC's business—ensuring his wife was cared for until released. Dupuis also contends that in other Idaho cases, the status of a hospital visitor as an invitee "was not in question at any point in the underlying litigation[.]" Dupuis further notes the jurisdictional split regarding the status of hospital visitors, and argues that from a policy standpoint, hospitals should be considered to be places of utmost safety, which purpose is not furthered by permitting hospitals to distinguish between visitors and patients.

In response, EIRMC argues that "the mere fact that Dupuis and EIRMC may have had a mutual or common interest in the purpose of his visit that evening . . . does not change the relationship of these parties." EIRMC contends that the district court acknowledged the separate ways to establish invitee status. In addition, EIRMC asserts that *Packer* is inapplicable, given Dupuis' lack of evidence proving he was conferring any benefit to EIRMC or that he was present for a purpose connected with EIRMC's business. Finally, EIRMC argues that Dupuis is urging "this Court to adopt a new overbroad, arbitrary rule in Idaho that anyone 'visiting a family member, friend, or other loved one in the hospital is to be considered an invitee' of the hospital[.]"

Dupuis counters that mere recitation of the alternate ways to establish invitee status does not constitute an analysis. In support, Dupuis points out that the district court did not address the "purpose" of EIRMC's business.

> A cause of action for common law negligence in Idaho has four elements: "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage."

*Brooks v. Wal-Mart Stores, Inc.*, 164 Idaho 22, 27, 423 P.3d 443, 448 (2018) (quoting *Griffith v. JumpTime Meridian, LLC*, 161 Idaho 913, 915, 393 P.3d 573, 575 (2017)). "When a negligence cause of action is based on premises liability, the element of duty depends on the status of the

7

injured person in relation to the landowner, i.e., invitee, licensee (social guest), or trespasser." *Id.* at 28, 423 P.3d at 449 (citing *Shea v. Kevic Corp.*, 156 Idaho 540, 548, 328 P.3d 520, 528 (2014)). These "three classifications of entrants" dictate the "sliding scale of protection" to be provided. *See Oswald v. Costco Wholesale Corp.*, 167 Idaho 540, 549, 473 P.3d 809, 820 (2020) (citation omitted).

Invitees are owed the highest duty of care in premises liability, and there are two avenues for a plaintiff to establish that he is an invitee. *See id.* A plaintiff can either establish that he was on the premises "for a purpose connected with the business conducted on the land," or that "it can reasonably be said that the visit may confer a business, commercial, monetary or other tangible benefit to the landowner." *Packer*, 167 Idaho at 210, 468 P.3d at 1288. "On the other hand, '[a] licensee is a visitor who goes upon the premises of another with the consent of the landowner in pursuit of the visitor's purpose.'" *Id.* (quoting *Chapman v. Chapman*, 147 Idaho 756, 762–63, 215 P.3d 476, 482–83 (2009)).

Whether a hospital visitor is an invitee or a licensee is an issue of first impression in Idaho. In at least two cases, this Court assumed that hospital visitors who slipped and fell on ice were invitees because the parties had not disputed their status. *See, e.g.*, *Robertson v. Magic Valley Reg'l Med. Ctr.*, 117 Idaho 979, 793 P.2d 211 (1990); *Bates v. Eastern Idaho Reg'l Med. Ctr.*, 114 Idaho 252, 755 P.2d 1290 (1988). However, this Court has never ruled on the specific issue of whether hospital visitors meet the definition of an invitee.

We conclude today that a hospital visitor is an invitee. Notably, the first avenue of establishing invitee status does not require that an entrant be on the premises for the *same* purpose as the business conducted on the land; instead, the entrant must be on the premises for a purpose *connected with* the business conducted on the land. *See Packer*, 167 Idaho at 210, 468 P.3d at 1288. Dupuis was obviously present on EIRMC's premises for the sole purpose of visiting his wife, who was admitted and actively receiving care from EIRMC. Dupuis' purpose was closely connected to EIRMC's business—that is, Dupuis was only present because his wife was being treated there as a patient.[2]

---

[2] We also note that the district court incorrectly focused on the distinction between "permission" and "invitation" with respect to invitees. The district court noted that "permitting visitors is not the equivalent of inviting visitors." However, in this Court's jurisprudence the extension of a formal, general invitation is not a prerequisite for establishing invitee status. An invitation to the public may be express or implied. *See, e.g.*, *Williamson v. Neitzel*, 45 Idaho 39, 40, 260 P. 689, 690 (1927). Dupuis enjoyed an implied invitation to be on EIRMC's premises to visit his wife.

We are not alone in adopting this rule. Although the district court acknowledged a jurisdictional split in the way courts categorize hospital visitors, it did *not* acknowledge that the majority of states retaining the common law status-based framework of premises liability consider hospital visitors to be invitees.[3] *See, e.g.*, *Ex parte Wooten*, 681 So.2d 149, 150–51 (Ala. 1996) (collecting cases). Scholarly sources also broadly describe the majority rule as treating hospital visitors as invitees. *See* 40A Am. Jur. 2d Hospitals and Asylums § 31, *Physical Condition of Hospital Premises* (2020); 71 A.L.R.2d 427 § 2, *Hospital's Liability to Visitor Injured As Result of Condition of Exterior Walks, Steps, or Grounds* (Originally published in 1960); Elizabeth Bosek et al., 65A C.J.S. *Negligence* § 496, *Invitee Status Defined for Purposes of Premises Liability, Generally* (2020).

Jurisdictions adopting the majority rule tend to rely on the existence of an implied invitation and that the presence of visitors in hospitals is an expected component of a hospital's business. For example, the United States Court of Appeals for the Fourth Circuit provided the following reasoning:

> It is a matter of common knowledge that all hospitals expect patients to have visitors, the number, duration and frequency of their visits depending upon the severity of the patient's illness. Certainly, near relatives, such as plaintiff in this case, have an implied invitation to visit. Such visits are for the mutual advantage of the patient, the visitor and the hospital. It is desirable from the standpoint of the hospital to permit, at the proper times and under proper conditions, visits to patients by relatives and friends. No one would patronize a hospital which did not permit relatives and friends to visit patients at proper times.

*Hamlet v. Troxler*, 235 F.2d 335, 337 (4th Cir. 1956). The Ohio Court of Appeals noted that "affording patients visitors is simply part of the business of a hospital." *Bowins v. Euclid Gen. Hosp. Ass'n*, 484 N.E.2d 203, 205 (Ohio 1984).

We agree with the rationale behind the majority rule. Hospitals must expect visitors to its facility. Those visitors would not be on the hospital's property but for the business (the care of the hospital's patients) being conducted on the hospital's land. We also note, contrary to the argument presented by counsel for EIRMC, that there is no indication that the majority rule has resulted in hospitals in those jurisdictions closing their premises to visitors. Given that hospitals in Idaho already owe a duty of care to patients as invitees, we are not persuaded that our holding today

---

[3] As of today, these states include Alabama, Arizona, Florida, Georgia, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maryland, Minnesota, New York, Ohio, Oklahoma, Oregon, South Carolina, South Dakota, Virginia, and the District of Columbia.

increases the burden of liability to hospitals. We also reject the argument that the hospital owes a different duty to Victor Dupuis as opposed to Carol Dupuis.[4] The duty owed to a patient should not be reduced for the person visiting the patient, whose only purpose in being on the premises is to visit the patient. As a result, the district court erred as a matter of law in concluding that hospital visitors are not invitees.

**B. The district court's error in not resolving the motion to strike is rendered moot by our determination that Dupuis is an invitee.**

Below, Dupuis disclosed two retained expert witnesses: York (as a snow removal and ice abatement expert); and a physician who treated Dupuis. Several days later, Dupuis filed a supplemental disclosure of its expert witnesses, specifying the materials which had specifically been reviewed by York. EIRMC moved to strike York's opinion, and although a hearing was held on the motion to strike, the district court never ruled on the motion. Instead, the district court pointed to the other evidence presented by the parties in granting EIRMC's summary judgment motion.

On appeal, Dupuis has made several arguments relating to the motion to strike and has argued that the district court erred in failing to answer the "threshold question" of the admissibility of York's opinion. We agree that the district court erred as a matter of law in failing to make the threshold determination on the admissibility of York's opinion. We have repeatedly stated that motions to strike should be resolved before addressing the merits of a summary judgment motion. "[I]f the admissibility of evidence presented in support of a motion for summary judgment is raised by objection by one of the parties, the court *must* first make a threshold determination as to the admissibility of the evidence 'before proceeding to the ultimate issue, whether summary judgment is appropriate.'" *Gem State Ins. Co. v. Hutchison*, 145 Idaho 10, 14, 175 P.3d 172, 176 (2007) (italics added). However, this error is rendered moot by our conclusion that Dupuis is an invitee. Accordingly, we decline to address Dupuis' additional arguments concerning the district court's weighing of the evidence.

---

[4] EIRMC contends the extension of invitee status to a hospital's visitor would be "arbitrary." However, relegating Victor to licensee status while at the same time affording Carol invitee status, as suggested by EIRMC, would be the epitome of an arbitrary classification. Assume that Victor and Carol Dupuis had been walking across EIRMC's parking lot and both had fallen and broken their hips. Carol was seeking treatment at EIRMC and Victor was assisting Carol in her efforts. If we were to accept EIRMC's argument, the duty owed Victor would be much less than that owed to Carol given that Carol was seeking treatment at EIRMC, while Victor was not. We see no principled reason to distinguish between the two as suggested by EIRMC. Both should be able to expect reasonable care regardless of their purpose for being on the hospital's premises.

## C. No additional common law duty to Dupuis was created by EIRMC's contract with B&K.

The district court concluded that "[a]s a landowner, EIRMC owed a duty to Dupuis only because Dupuis was on EIRMC's property." The district court rejected Dupuis' argument that—in addition to the duty owed because of his entrant status—EIRMC had assumed a duty to entrants like him by contracting with B&K for snow removal. The district court reasoned that assumption of a duty would only apply if EIRMC had no prior duty toward Dupuis, but because EIRMC did owe Dupuis a status-based duty, EIRMC could not have assumed an affirmative duty.

On appeal, Dupuis argues that the district court erred in its conclusion that Dupuis was limited to the premises liability theory. Dupuis contends that in addition to whatever duty EIRMC owed him, EIRMC also independently assumed a duty of care by undertaking to perform a safety-related service—having an employee monitor the snow and ice conditions in the parking lot. (Citing *Forbush v. Sagecrest Multi Family Prop. Owners' Ass'n*, 162 Idaho 317, 326, 396 P.3d 1199, 1208 (2017)). In response, EIRMC characterizes its monitoring of snow and ice conditions as the exercise of ordinary care in inspecting the premises for the benefit of *invitees*, and that Dupuis was a licensee; therefore, he was not an entrant to whom EIRMC owed this duty.

Premises liability "limits a possessor of land's liability to injured parties based upon the status of the plaintiff at the time of the injury." *Oswald*, 167 Idaho at 551, 473 P.3d at 820. However, a theory of premises liability is inapplicable when the defendant is neither an owner nor occupier of the premises. *See Forbush*, 162 Idaho at 323, 396 P.3d at 1205. In those cases, a theory of ordinary negligence applies, in which a plaintiff must independently establish a source of duty. *See, e.g.*, *Baccus v. Ameripride Servs., Inc.*, 145 Idaho 346, 350, 179 P.3d 309, 313 (2008). Other ways for a plaintiff to establish a source of duty include proving a special relationship that creates a duty or proving that a duty has been independently adopted. *See Coghlan v. Beta Theta Pi Fraternity*, 133 Idaho 388, 400, 987 P.2d 300, 312 (1999).

> Even when an affirmative duty generally is not present, a legal duty may arise if "one voluntarily undertakes to perform an act, having no prior duty to do so." [*Coghlan*, 133 Idaho] at 400, 987 P.2d at 312 (quoting *Featherston v. Allstate Ins. Co.*, 125 Idaho 840, 843, 875 P.2d 937, 940 (1994)). In such case, the duty is to perform the voluntarily-undertaken act in a non-negligent manner. *Id.* But, "[w]hen a party assumes a duty by voluntarily performing an act that the party had no duty to perform, the duty that arises is limited to the duty actually assumed." *Martin v. Twin Falls School Dist. No. 411*, 138 Idaho 146, 150, 59 P.3d 317, 321 (2002).

*Baccus*, 145 Idaho at 350, 179 P.3d at 313.

Because we conclude that Dupuis is an invitee, EIRMC owed him a duty to keep the premises in a reasonably safe condition. *Holzheimer v. Johannesen*, 125 Idaho 397, 400, 871 P.2d 814, 817 (1994). As a practical and legal matter, this duty is indistinguishable from the duty imposed by the common law. Consequently, Dupuis' effort to establish a common law duty independent from the duty he is owed as an invitee is an effort in redundancy. *Compare* IDJI 3.09 (duty owed to invitees) ("An [owner] [occupant] owes a duty of ordinary care under all the circumstances towards invitees who come upon the premises."), *with* IDJI 2.20 (definition of negligence) ("When I use the word 'negligence' in these instructions, I mean the failure to use ordinary care in the management of one's property or person. The words 'ordinary care' mean the care a reasonably careful person would use under circumstances similar to those shown by the evidence."). EIRMC's practices in contracting with B&K regarding snow removal and ice abatement obviously sheds light on whether it acted as a "reasonably careful person would under the circumstances." At the same time, it is unnecessary to impose a duplicative common law negligence duty on top of the duty owed to an invitee. Both are owed the duty of ordinary care.

## IV.    CONCLUSION

Because Dupuis is an invitee, this Court reverses the order granting summary judgment, vacates the judgment entered, and remands for further proceedings. Costs are awarded to Dupuis as the prevailing party on appeal.

Chief Justice BEVAN, Justices BURDICK, BRODY, and MOELLER CONCUR.