IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| FIRST BANK OF LINCOLN, A MONTANA BANK CORPORATION, | ) ) ) | No. 33192-0-III |
| Appellant, | ) ) ) | |
| v. | ) ) | OPINION PUBLISHED IN PART |
| DONALD C. TUSCHOFF AND JANE DOE TUSCHOFF, HUSBAND AND WIFE, AND THE MARITAL COMMUNITY COMPRISED THEREOF; BANANA BELT GAMING LLC; JOHN DOES I-IV; AND ALL PARTIES CLAIMING RIGHT, TITLE OR INTEREST IN THE SUBJECT REAL PROPERTY IN ASOTIN COUNTY, WASHINGTON, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) | |

LAWRENCE-BERREY, J. — Donald Tuschoff (Tuschoff) sold a bowling alley to the

Schwab family, who financed the purchase with a note secured by a deed of trust.

Tuschoff and his daughter thereafter borrowed money from First Bank of Lincoln (First

Bank) to purchase Hotel Lincoln located in the state of Montana. As additional collateral

to secure the loan from First Bank, Tuschoff assigned the Schwab/Tuschoff deed of trust

to First Bank. First Bank properly recorded the assignment of the deed of trust. Banana Belt Gaming LLC (Banana Belt) purchased the bowling alley from Schwab, paid Tuschoff the balance owing on the Schwab/Tuschoff note, but failed to secure a release of the assigned deed of trust from First Bank.

First Bank later learned of the sale and sued Tuschoff and Banana Belt. In addition, First Bank conducted a nonjudicial sale of the Hotel Lincoln property in Montana. Banana Belt successfully moved for summary judgment. The trial court determined as a matter of law that Banana Belt's payment of the Schwab/Tuschoff note extinguished First Bank's assigned Schwab/Tuschoff deed of trust. First Bank appeals.

Most of the issues on appeal involve whether Banana Belt's purchase of the bowling alley is subject to First Bank's recorded assigned deed of trust. In the published portion of this opinion we answer these issues in the affirmative, in favor of First Bank. The last issue on appeal is whether First Bank's election to foreclose nonjudicially against the Hotel Lincoln property in Montana extinguished the underlying obligation and also the Schwab/Tuschoff deed of trust. In the unpublished portion we direct Banana Belt to file suit in Montana to have this issue resolved, due to the fact that resolution of this issue requires application of Montana law and because the controlling precedent is unclear. In general, we reverse and remand for the trial court to proceed consistent with this opinion.

2

FACTS

This case involves a series of real estate transactions related to a bowling alley located in Clarkston, Washington. Tuschoff originally bought the bowling alley in July 1994 from Rex and Mary Helen Humphrey for $550,000.00. Tuschoff financed the sale by executing a note and deed of trust.

A.    *Tuschoff sells the bowling alley to Schwab*

In 1998, Tuschoff sold the bowling alley to a group of investors for $1,100,000. The group of investors included Gene Schwab, Ladene Schwab, James Schwab, and several others (Schwab). Schwab financed the sale by executing a $1,100,000 note, payable to Tuschoff in monthly installments of $9,791.65. To secure repayment, Schwab executed a deed of trust, listing Tuschoff as the beneficiary. The Schwab/Tuschoff deed of trust stated:

> This deed is for the purpose of securing performance of each agreement of Grantor herein contained, and payment of the sum of One Million One Hundred Thousand and No/100 Dollars ($1,100,000.00) with interest, in accordance with the terms of a promissory note of even date herewith payable to Beneficiary or order, and made by Grantor, and all renewals, modifications and extensions thereof, and also such further sums as may be advanced or loaned by Beneficiary to Grantor, or any of their successors or assigns, together with interest thereon at such rate as shall be agreed upon.

Clerk's Papers (CP) at 82. On November 2, 1998, Tuschoff recorded the Schwab/Tuschoff deed of trust with the Asotin County Auditor's Office. The Humphreys remained as senior lienholders.

Tuschoff placed the Schwab/Tuschoff note and deed of trust in escrow with Land Title of Nez Perce County (Land Title), which held the original loan documents, collected Schwab's monthly payments, and disbursed those payments to Tuschoff.

B.    *Tuschoff buys Hotel Lincoln and assigns the Schwab/Tuschoff deed of trust to First Bank*

On January 27, 2011, First Bank lent $440,000 to Tuschoff and his daughter Laurie Parks so the two could buy Hotel Lincoln in Lincoln, Montana. At the time Tuschoff and Parks applied for the loan, the then-owners of Hotel Lincoln did not have adequate financial statements so that First Bank could analyze the business's cash flow. To secure the $440,000 loan, Tuschoff offered to provide additional collateral to First Bank in the form of an assignment of his beneficial interest in the Schwab/Tuschoff deed of trust and a security interest in the Schwab/Tuschoff note. First Bank agreed to loan the money in exchange for the additional collateral. Tuschoff and Parks thereafter signed a promissory note for $440,000, partially secured by a deed of trust against the purchased property. The promissory note was payable in full on February 1, 2014. It contained a due on sale clause that allowed First Bank to "declare the entire balance of this Note to be

4

immediately due and payable upon the . . . sale of . . . any part of the Property," earlier defined as "any property . . . that secures . . . performance of the obligations of this Loan." CP at 72, ¶ 12, CP at 70, ¶ 1.E.

That same day, Tuschoff executed further documents to provide First Bank the additional agreed on collateral. Specifically, Tuchosff executed an "Assignment of Deed of Trust," by which Tuschoff assigned his beneficial interest in the Schwab/ Tuschoff deed of trust to First Bank. CP at 86. The assignment broadly assigned "all right title and interest in said Note and all rights accrued under said Deed of Trust." *Id.* First Bank recorded the assignment with the Asotin County Auditor. Despite this purported assignment of all right title and interest in the note, Tuschoff continued receiving monthly installment payments from Schwab.

Tuschoff also signed a security agreement wherein he granted First Bank a security interest in all property described therein, including:

> B. Instruments, Documents and Chattel Paper. All instruments and rights I have now or in the future to payments including, but not limited to, rights to payment arising out of all present and future documents, instruments, tangible and electronic chattel paper, and loans and obligations receivable. This includes any rights and interests . . . which I may have by law or agreement against any Account Debtor or obligor of mine.

5

C.    Specific Property. DEED OF TRUST    *Chattel Paper Issued to DONALD C. TUSCHOFF by    . [sic] and executed on October 22, 1998 in the amount of $1,100,000, secured by [the bowling alley property].*[1]

CP at 95 (emphasis added). First Bank then filed a UCC-1 statement with the

Washington Department of Licensing providing notice of its secured interest in

[a]*ll instruments, including . . . promissory notes . . . .*    DEED OF TRUST    *Chattel Paper issued to DONALD C. TUSCHOFF by    . [sic] and executed on October 22, 1998 in the amount of $1,100,000.00 . . . secured by [the bowling alley property]*.

CP at 101-02 (emphasis added).

C.    *Banana Belt buys the bowling alley from Schwab*

In June 2013, Schwab agreed to sell the Clarkston, Washington bowling alley to

Banana Belt for $1,350,000. Banana Belt hired First American Title Company (First

American) to close the sale with Schwab. First American's limited practice officer, Tonja

Hatcher, handled the closing. Ms. Hatcher obtained the title commitment on the bowling

alley property and reviewed it. She noticed in ¶ 21 of that commitment an exception that

listed the Humphreys/Tuschoff deed of trust. She also noticed in ¶ 23 an exception that

---

[1] The parties dispute whether Tuschoff assigned the Schwab/Tuschoff note to First Bank but retained the right to monthly payments, or whether Tuschoff only gave First Bank a secured interest in the note. Because an owner of property does not also take a security interest in it, the execution of the security agreement makes clear that First Bank had only a security interest in the note.

listed Tuschoff's assignment of the Schwab/Tuschoff deed of trust to First Bank. She did not contact First Bank to inquire about First Bank's rights.

Banana Belt borrowed $600,000 from Columbia Bank to finance the purchase. Columbia Bank sent a letter instructing First American to assure that its lien rights were in first position, and "request[ed] that exceptions [listed in paragraphs] 21 and 23 [in the title commitment] be released." CP at 222.

Accordingly, Ms. Hatcher sent Rita Johnson, the Land Title employee who handled the Humphreys/Tuschoff and Schwab/Tuschoff note escrow accounts, an e-mail asking for a full payoff amount for the Schwab/Tuschoff note. The e-mail attached the pages of the title commitment listing both the Humphreys/Tuschoff deed of trust as well as the Schwab/Tuschoff deed of trust. Ms. Hatcher drew an arrow next to Tuschoff's assignment of the Schwab/Tuschoff deed of trust to indicate "that there [was] somebody else involved." CP at 202. Ms. Johnson did not get the title commitment pages nor did she notice the assignment of the Schwab/Tuschoff deed of trust.

Ms. Hatcher sent a follow-up e-mail to Ms. Johnson requesting confirmation that Land Title would pay off the deeds of trust so that she would be able to guarantee clear title to Banana Belt and Columbia Bank. Ms. Johnson believed she was required to pay off Tuschoff personally and responded, "This is a wrap and both Deeds of Trust will be

7

paid." CP at 247. Ms. Hatcher and Ms. Johnson never discussed whether Land Title would pay First Bank, as opposed to Tuschoff. Ms. Johnson testified in her deposition that she does not review the title commitment to determine who Land Title needs to pay, but instead follows the instructions in Land Title's file.

Several days later, Ms. Johnson sent Ms. Hatcher a payoff quote for the Schwab/Tuschoff note, which showed an outstanding balance of $359,271.82. First American then sent Land Title a check for $359,271.82, which it said represented full payoff for the Schwab/Tuschoff note. The letter specified that it sent the check in exchange "for a release of the original Promissory Note and original Deed of Trust/Mortgage recorded November 02, 1998." CP at 492. Land Title then disbursed $355,375.75 to Tuschoff and $3,855.93 to Humphrey. This fully satisfied Schwab's obligation to Tuschoff on the Schwab/Tuschoff note. Schwab then conveyed the bowling alley to Banana Belt by statutory warranty deed.

## D. *First Bank sues Tuschoff and Banana Belt*

First Bank's Hotel Lincoln loan to Tuschoff matured on February 1, 2014, and a remaining principal balance existed of $400,430.42. In reviewing whether to renew the loan, First Bank learned that the bowling alley had been sold and funds disbursed to

Tuschoff, despite the recorded assignment to First Bank of the Schwab/Tuschoff deed of trust.

First Bank sued Tuschoff and Banana Belt in Asotin County Superior Court, seeking a declaratory judgment that Tuschoff's assignment of his beneficial interest in the Schwab/Tuschoff deed of trust remained a valid lien against the bowling alley property.

First Bank held a nonjudicial foreclosure sale for the Hotel Lincoln property on August 25, 2014. First Bank was the only bidder at the trustee's sale, and successfully purchased the property. First Bank asserts that a $250,000 balance will remain unpaid in connection with the Montana note after First Bank liquidates the Hotel Lincoln property. First Bank never disclosed during discovery the amount it bid at the trustee's sale to reacquire Hotel Lincoln.

First Bank also sued Tuschoff in Montana District Court, Lewis and Clark County under Case No. DDV 2014-326. The Montana trial court's decision is unclear, and will be discussed in further detail later. Ultimately, First Bank obtained a money judgment against Tuschoff. Tuschoff has since absconded.

On October 24, 2014, Banana Belt moved the trial court for summary judgment and an order to quiet title and reconvey the Schwab/Tuschoff deed of trust. Banana Belt's principal argument was that its payment to Schwab extinguished the Schwab/Tuschoff

9

deed of trust. First Bank filed a cross motion for summary judgment. On February 10, 2015, the trial court granted Banana Belt's motion and denied First Bank's motion.

First Bank appeals and requests that this court grant summary judgment in its favor as a matter of law.

## ANALYSIS

This court reviews a summary judgment order de novo. *Lunsford v. Saberhagen Holdings, Inc.*, 166 Wn.2d 264, 270, 208 P.3d 1092 (2009). When reviewing a summary judgment order, the appellate court engages in the same inquiry as the trial court, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Riojas v. Grant County Pub. Util. Dist.*, 117 Wn. App. 694, 697, 72 P.3d 1093 (2003). Summary judgment is appropriate only if the moving party can show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "A material fact is one upon which the outcome of the litigation depends in whole or in part." *Atherton Condo Apt.-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). Finally, we may affirm a trial court's summary judgment order on any basis supported by the record. *Lewark v. Davis Door Servs., Inc.*, 180 Wn. App. 239, 242, 321 P.3d 274, *review denied*, 180 Wn.2d 1026, 328 P.3d 902 (2014).

A. *A seller of property can only convey the seller's interest*

A seller of property can convey no greater interest in the property than the seller

has. *Firth v. Hefu Lu*, 146 Wn.2d 608, 615, 49 P.3d 117 (2002). Applying this rule to the

present facts, Tuschoff conveyed only his interest in the property when he reconveyed the

deed of trust to Schwab, and Schwab conveyed only his interest in the property when he

deeded the property to Banana Belt. Here, because Tuschoff could not convey the

property free and clear of the Schwab/Tuschoff deed of trust that he had earlier assigned

to First Bank, Banana Belt purchased the bowling alley property subject to First Bank's

assigned deed of trust.

B. *The bowling alley property secured two debts*

Banana Belt argues that its payment of the underlying Schwab/Tuschoff note

satisfied the deed of trust because a security interest cannot exist without an obligation.

In support of its argument, Banana Belt cites 18 William B. Stoebuck & John W. Weaver,

*Washington Practice: Real Estate: Transactions* § 17.1, at 253 (2d ed. 2004). The flaw in

Banana Belt's argument is that the Hotel Lincoln note created a separate obligation

against the bowling alley property. Although Banana Belt's payment to Tuschoff

extinguished Tuschoff's right to foreclose if Schwab failed to pay the Schwab/Tuschoff

11

note, it did not extinguish First Bank's right to foreclose if Tuschoff failed to pay the

Hotel Lincoln note—a separate obligation that encumbered the property.

    C.    *RCW 65.08.120 does not protect a subsequent purchaser with notice*

Banana Belt argues RCW 65.08.120 allows it to pay the note payee rather than the

payee's assignee, because the recording of a seller's assignment is not notice that its

payment was improper. RCW 65.08.120 provides:

> **Assignment of mortgage—Notice.** The recording of an assignment of a
> mortgage is not *in itself* notice to the mortgagor, his or her heirs, assigns or
> personal representatives, to invalidate a payment made by any of them to a
> prior holder of the mortgage.

(Emphasis added.) Assuming without deciding that the above rule applies beyond

mortgages to notes and deeds of trust, the rule does not advance Banana Belt's position.

First, the rule applies to obligors and certain successors in interest to the obligor, who

make payments on a debt. This rule therefore would apply to payments made by Schwab

to Tuschoff, but would not apply to payments made by Banana Belt to Tuschoff since

Banana Belt is not an "heir, assign, or personal representative" of Schwab. Second, the

rule protects obligors on a debt and certain successors in interest to the obligor, when

payments are made to an assignor of the debt when the obligor or its successor had no

notice that the payments should have been directed to the assignee. Here, a subsequent

12

purchaser such as Banana Belt who actually knows of First Bank's recorded assignment may not ignore First Bank's interest by claiming it did not know of it.

D. *Banana Belt is not a bona fide purchaser*

Because a bona fide purchaser can obtain rights greater than a seller has, we next determine whether this doctrine protects Banana Belt.

> [I]f the purchaser has knowledge or information that would cause an ordinarily prudent person to inquire further, and if such inquiry, reasonably diligently pursued, would lead to discovery of title defects or of equitable rights of others regarding the property, then the purchaser has constructive knowledge of everything the inquiry would have revealed.

*Albice v. Premier Mortg. Servs. of Wash., Inc.*, 174 Wn.2d 560, 573, 276 P.3d 1277 (2012). Here, Banana Belt had constructive knowledge—either through its agent First American or the recording of the assignment itself—that First Bank claimed an interest in the bowling alley property. Had First American's closing agent contacted First Bank in June 2013, First American would have learned that Tuschoff had assigned First Bank the Schwab/Tuschoff deed of trust to secure a $440,000 promissory note that was payable in full in less than eight months, that over $400,000 was owing on the note, and that the note had a due on sale clause that allowed First Bank to accelerate payment in full if the bowling alley was sold. In addition, First American would have learned that First Bank had a perfected security interest in the promissory note itself. All of this information is

13

imputed to Banana Belt because First American was the closing agent for Banana Belt.

*Nat'l Bank of Wash. v. Equity Inv'rs*, 81 Wn.2d 886, 910, 506 P.2d 20 (1973). We

therefore conclude that Banana Belt was not a bona fide purchaser and was thus incapable

of obtaining a greater interest in the bowling alley property than Schwab (through

Tuschoff) had the right to convey.

E.    *First Bank's recorded interest is entitled to protection even though Tuschoff had not defaulted on the Hotel Lincoln note*

Banana Belt argues that First Bank merely had a conditional assignment of the

Schwab/Tuschoff note and deed of trust, and its interests did not become absolute until or

unless Mr. Tuschoff defaulted.[2] Whether First Bank's interest was absolute or

conditional is of no consequence to our inquiry. Tuschoff was unable to convey title free

and clear of First Bank's assigned deed of trust to Schwab, and hence Schwab was unable

to convey clear title to Banana Belt.

---

[2] An assignor of a conditional security interest may foreclose on its interest. *See Uni-Com Nw., Ltd. v. Argus Publ'g Co.*, 47 Wn. App. 787, 794, 737 P.2d 304 (1987). Even after Tuschoff assigned the Schwab/Tuschoff deed of trust to First Bank, Tuschoff retained the right to foreclose if Schwab defaulted. In that event, First Bank could have protected its interests by becoming a bidder at the foreclosure sale, and assuring that the bid was sufficient to pay all or part of the $400,000 balance of the Hotel Lincoln note.

14

F.  *Whether First Bank is precluded from recovering against Banana Belt under Montana law*

Banana Belt argues that First Bank's decision to foreclose nonjudicially against the Hotel Lincoln property prevents First Bank from collecting further on First Bank's note with Tuschoff, and therefore extinguishes the assigned Schwab/Tuschoff deed of trust. First Bank responds that a Montana trial court decided this issue contrary to Banana Belt's argument, that the obligation was not extinguished, and we should give comity to that decision. We reject First Bank's argument, and conclude that application of comity to this issue would be inappropriate.

The comity doctrine allows a court, acting within its discretion, to give effect to the law and resulting orders of another jurisdiction out of deference and respect, considering the interests of each jurisdiction. *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 160-61, 744 P.2d 1032, 750 P.2d 254 (1987). The doctrine of comity, however, does not apply beyond the "immediate parties and the underlying claim." *In re Estate of Toland*, 180 Wn.2d 836, 848, 329 P.3d 878 (2014). Here, Banana Belt was not a party to the Montana action. Rather, the Montana action was brought by First Bank against Tuschoff. For this reason, Banana Belt had no right to appear in that controversy, could not protect its interests, and could not appeal an adverse decision. Notice of the litigation, an opportunity to participate, and the ability to appeal an adverse

15

decision are important considerations in determining whether to apply comity. *See id.* at

848. We conclude that comity cannot be applied to a foreign state's decision where the

party resisting its application did not have the right to participate or appeal the foreign

state's decision.

Reversed and remanded.

The remainder of this opinion has no precedential value. Therefore, it will be filed

for public record in accordance with RCW 2.06.040, the rules governing unpublished

opinions.

G.     *Montana's anti-deficiency statute*

Having concluded that comity does not preclude us from deciding the issue

presented, we now turn to Montana's anti-deficiency statute, Mont. Code Ann. (MCA)

§ 71-1-317:

> Deficiency judgment not allowed. When a trust indenture executed in
> conformity with this part is foreclosed by advertisement and sale, other or
> further action, suit, or proceedings may not be taken or judgment entered
> for any deficiency against the grantor or the grantor's surety, guarantor, or
> successor in interest, if any, on the note, bond, or other obligation secured
> by the trust indenture or against any other person obligated on the note,
> bond, or other obligation.

On its face, Montana's anti-deficiency statute seems to apply to nonjudicial

foreclosures of any type of real property, residential or commercial. The Montana trial

16

court cited *First Security Bank v. Abel*, 2008 MT 161, ¶ 30, 343 Mont. 313, 184 P.3d 318

for the proposition that the anti-deficiency statute does not apply to nonjudicial

foreclosures of commercial properties. *Abel* did not involve a nonjudicial foreclosure.

*Id.* at ¶ 8. Therefore, *Abel* is not relevant to the issue presented.

Banana Belt asserts that *First State Bank of Forsyth v. Chunkapura*, 226 Mont. 54,

734 P.2d 1203 (1987) stands for the proposition that a lender that forecloses nonjudicially

against any property has no right to a deficiency judgment. *Chunkapura*, like *Abel*,

involves a judicial foreclosure. Nevertheless, *Chunkapura* contains clear dicta:

> Under the Small Tract Financing Act, instead of mortgages, trust
> indentures (sometimes called "deeds of trust" or "trust deeds") are
> authorized. Such instruments have the effect of transferring the title of the
> borrower to a private trustee to be held by the trustee to secure the
> performance of the obligation by the borrower. A power of sale is by the
> law granted to the trustee to be exercised after a breach of the obligation for
> which the trust transfer is security. Section 71-1-304(2), MCA. The trust
> indenture is considered to be a mortgage on real property, § 71-1-305,
> MCA, and provisions are made in the law for the method whereby a trustee
> may foreclose a trust indenture by advertisement and sale. Section 71-1-
> 313, MCA. *It is certain that when a trustee conducts a foreclosure sale, a
> deficiency judgment is not allowed, § 71-1-317, MCA*, and the purchaser at
> the trustee sale is entitled to possession of the property on the tenth day
> following the sale. Section 71-1-319, MCA.

*Id.* at 58 (emphasis added).[3]

---

[3] The *Chunkapura* dissent agreed that a lender who forecloses by advertisement
and sale, i.e., nonjudicially, has no right to a deficiency judgment. *Id.* at 64 (Weber, J.,

The *Chunkapura* court, noting that there was no statutory guidance on whether a deficiency judgment was available following a *judicial* sale, examined other western states' laws on the subject. *Id.* at 60-62. Noting that the Small Tract Financing Act of Montana, Title 71 MCA, did not include any requirement for a court to set an upset price—which would have protected a borrower by requiring the purchaser at foreclosure to pay a fair purchase price—the *Chunkapura* court held that lenders were not entitled to a deficiency judgment following even a *judicial* foreclosure. *Id.* at 62-63.

The *Chunkapura* court later restricted its opinion in an order on rehearing. It is this restriction that creates the ambiguity for this court. On rehearing, the *Chunkapura* court restricted the nondeficiency rule to future foreclosures of *residential* property. *Id.* at 67. The restrictive language seemingly allows a deficiency judgment following any foreclosure of nonresidential property, i.e., commercial property. However, it can be argued that the rehearing order was intended only to permit a deficiency judgment following a *judicial* foreclosure of commercial property, and did not alter the earlier unanimous statements from the majority and dissent which agreed that under the plain language of MCA § 71-1-317 there cannot be a deficiency judgment following a *nonjudicial* (advertisement and sale) foreclosure. *See Trs. of the Wash.-Idaho-Mont.*

dissenting).

18

*Carpenters-Emp'rs Ret. Trust Fund v. Galleria P'ship*, 239 Mont. 250, 257-58, 780 P.2d 608 (1989) ("When a lender holding a trust indenture as security *chooses to foreclose under the mortgage laws, Chunkapura* as modified holds that except for occupied single family residential property, lenders can obtain a deficiency judgment even on trust indentures.") (emphasis added).[4]

### H. *Explanation for reason of disposition*

RAP 12.2 allows this court to "modify the decision being reviewed and take any other action as the merits of the case and the interest of justice may require." We take the unusual step of declining to answer a dispositive issue, but instead require Banana Belt to file suit in Montana so a Montana court can answer the dispositive issue. Only if the Montana court determines that First Bank is entitled to a deficiency judgment, it will also need to determine the amount of the judgment, which will require resolution of how much First Bank bid to purchase the Hotel Lincoln at foreclosure. For at least three reasons, we believe that it is in the interest of justice for a Montana court to resolve these issues of Montana law. First, the controlling issue is one of Montana law. Second, this court

---

[4] First Bank further argues that it is attempting to collect as *owner* of the Schwab/Tuschoff note, not as a secured party of that note. First Bank's arguable right to collect as an owner of the Schwab/Tuschoff note does not give First Bank any right to collect against Banana Belt. This is because Banana Belt neither was the borrower on the note nor did it assume any liability on it.

19

cannot reach a consensus on what Montana law requires. Third, although cases sometimes are dismissed under the doctrine of forum non conveniens because they involve questions of foreign law, the potential presence of a debt against real property in Washington convinces us that our state must retain jurisdiction to clear title of the assigned deed of trust, depending on the resolution of the Montana state issues. The lack of a procedure for an intermediate appellate court such as ours to certify an issue of Montana law to the Montana Supreme Court has resulted in this unusual remedy. *See* Mont. R. App. P. 15(3) (certification of questions of law).

I.    *Instructions on remand*

We remand to the trial court for it to stay further proceedings for Banana Belt to file suit in Montana. We deem it prudent for a Montana court to determine whether First Bank has a right to a deficiency judgment on its promissory note with Tuschoff following its election to foreclose against the Hotel Lincoln by advertisement and sale, and if so, the amount of the deficiency judgment.

If the Montana court determines First Bank has no right to a deficiency judgment against Tuschoff,[5] the trial court is directed to enter judgment in favor of Banana Belt and

---

[5] First Bank's right (or lack of right) to a deficiency judgment against Tuschoff on the unpaid promissory note is separate from First Bank's right against Tuschoff for conversion of funds, for which First Bank already has received a judgment. Our opinion

to enter such orders as necessary to clear title of the assigned deed of trust that currently encumbers the bowling alley property. This is because First Bank's lien against the bowling alley property is extinguished without an existing obligation secured by the assigned Schwab/Tuschoff deed of trust. *See* 18 Stoebuck & Weaver, *supra*, § 17.1, at 253 (explaining that a security cannot exist without an obligation).

If the Montana court declines to render a decision on the identified issue of Montana law despite (in our opinion) the parties having a justiciable controversy, the trial court is directed to determine these questions of Montana law. *See* RCW 5.24.020.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____
Korsmo, J.

_____
Fearing, C.J.

---

does not alter First Bank's right to collect on its conversion judgment against Tuschoff.

21