## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 46000

FIRST BANK OF LINCOLN, a Montana bank corporation,

      Plaintiff-Appellant,

v.

LAND TITLE OF NEZ PERCE COUNTY, INC., an Idaho corporation,

      Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, May 2019 Term

Opinion Filed: November 18, 2019

Karel A. Lehrman, Clerk

---

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Jeff M. Brudie, District Judge.

District court grant of summary judgment, affirmed.

Paine Hamblen, LLP, Spokane, WA, for appellant. Gregory S. Johnson argued.

Givens Pursley, LLP, Boise, for respondent. Thomas E. Dvorak argued.

---

BURDICK, Chief Justice.

In an appeal arising out of Nez Perce County, First Bank of Lincoln (First Bank) challenges the district court's grant of summary judgment in favor of Land Title of Nez Perce County Incorporated (Land Title). In 2011, First Bank loaned Donald Tuschoff (Tuschoff) $440,000 to purchase the Hotel Lincoln in Lincoln, Montana. The loan was secured by a deed of trust against the hotel. As additional collateral, Tuschoff assigned First Bank his interest in a note and deed of trust on a bowling alley in Washington. Later, following a sale of the bowling alley, Land Title distributed the proceeds to Tuschoff and other interested parties rather than First Bank.

First Bank did not learn of the bowling alley sale until it completed its annual loan review of Tuschoff's hotel loan. Subsequently, Tuschoff defaulted on the hotel loan. First Bank held a non-judicial foreclosure sale of the hotel and placed a full-credit bid of the approximately

1

$425,000 owed to it by Tuschoff. First Bank was able to later sell the hotel for approximately $190,000. First Bank then initiated several lawsuits against various parties in Washington, Montana, and Idaho, seeking to recover the "deficiency" between what it was owed and for what it sold the hotel. Relevant here is First Bank's suit against Land Title in Idaho. The district court, applying Montana law, granted summary judgment in favor of Land Title. The court determined that First Bank's full credit bid extinguished Tuschoff's debt, and once that debt was extinguished, the assignment of Tuschoff's interest in the bowling alley as collateral for that debt was also extinguished. We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In July 1994, Tuschoff purchased a bowling alley located in Asotin County, Washington from Rex and Helen Humphrey (the Humphreys). Tuschoff's purchase of the bowling alley was financed with a note secured by a deed of trust (Tuschoff/Humphrey deed of trust). In October 1998, Tuschoff sold the bowling alley to an investor group, Schwab, and financed this sale with another note secured by a deed of trust (Schwab/Tuschoff deed of trust). The second note was delivered to a company which was later purchased by Land Title.

In January 2011, Tuschoff obtained a $440,000 loan from First Bank to purchase the Hotel Lincoln, located in Lincoln, Montana. This loan was secured by a deed of trust against the hotel as well as an assignment of Tuschoff's interest in the bowling alley note and deed of trust.

In June 2013, Schwab sold the bowling alley to Banana Belt Gaming, LLC (Banana Belt), and executed a $1,100,000 note payable to Tuschoff in monthly installments. As part of the sale, Schwab also executed a deed of trust listing Tuschoff as the beneficiary. Tuschoff subsequently placed the note and deed of trust in escrow with Land Title.

First American Title Company (First American) handled the closing of the Schwab/Banana Belt sale. An employee of First American obtained a title commitment from Land Title which listed the Tuschoff/Humphrey deed of trust, the Schwab/Tuschoff deed of trust, and the assignment to First Bank. Prior to closing, the employee at First American contacted Land Title requesting a payoff quote and confirmation that the quoted amount would pay off both deeds of trust. Land Title confirmed that both deeds of trust would be paid, and First American sent Land Title a check for the quoted payoff amount. Subsequently, Land Title distributed the money to the Humphreys and Tuschoff, but not First Bank.

2

Some time later, First Bank discovered the bowling alley had been sold and the proceeds had been distributed to the Humphreys and Tuschoff. In April 2014, First Bank brought suit in Washington against Tuschoff and Banana Belt seeking a declaratory judgment as to its interest in the bowling alley (the Washington litigation). Subsequently, Tuschoff defaulted on the Hotel Lincoln loan.

In June 2014, First Bank had the Hotel Lincoln appraised at a value of $210,000. On August 24, 2014, First Bank held a non-judicial foreclosure sale of the Hotel Lincoln. First Bank was the only bidder and bid the entire amount due on Tuschoff's underlying note, $425,748.50. First Bank later sold the Hotel Lincoln for approximately $193,000.

Meanwhile, in the Washington litigation, the trial court granted summary judgment in favor of Banana Belt, holding that Banana Belt's payment of the Schwab/Tuschoff deed of trust extinguished First Bank's interest. In April 2016, the Washington Court of Appeals reversed the trial court's ruling. *First Bank of Lincoln v. Tuschoff*, 375 P.3d 687, 693 (Wash. Ct. App. 2016). It held that Banana Belt purchased the bowling alley subject to First Bank's assignment and that the Hotel Lincoln note created a separate obligation against the bowling alley. *Id*. However, the Washington Court of Appeals remanded the case and directed Banana Belt to file suit in Montana so that a Montana court could determine if First Bank was owed a deficiency judgment. *Id.* Banana Belt did not re-file in Montana following the Washington Court of Appeals' decision. Instead, Banana Belt entered into a stipulated resolution with First Bank wherein both parties dismissed their claims against each other and First Bank gave up the right to restore its interest in the bowling alley.

In November 2016, First Bank filed the current lawsuit against Land Title alleging negligence and breach of contract. It sought recovery of the $170,000 balance on the loan to Tuschoff, plus interest. Ruling on cross motions for summary judgment, the district court determined that Montana law applied. The district court concluded that, under Montana law, a successful credit bid on a property in foreclosure is credited to the overall outstanding debt of a debtor. Thus, the district court held that when First Bank bid the full amount owed by Tuschoff on the Hotel Lincoln ($425,748.50), it extinguished all of Tuschoff's debt. Accordingly, the district court held that there was no longer any outstanding debt between Tuschoff and First Bank, and therefore no damages to recover for any alleged negligence or breach of contract on

3

the part of Land Title for its failure to direct the quoted payoff amount to First Bank. The court stated:

> First Bank's claims against Land Title relate solely to its interest in the bowling alley property. At the acceptance of the First Bank's full credit bid, First Bank no longer held an interest in the bowling alley property. There remains no genuine issue of material fact regarding First Bank's claims against Land Title. Therefore, Land Title's motion for summary judgment is granted.

First Bank timely appeals.

## II. ISSUES ON APPEAL

1. Does Montana's anti-deficiency statute apply in this case?
2. Even if section 71-1-317 is inapplicable, does First Bank's negligence claim against Land Title have merit?
3. Is either party entitled to attorney's fees on appeal?

## III. STANDARD OF REVIEW

"When reviewing a grant of summary judgment, this Court employs the same standard as the district court." *Idaho Youth Ranch, Inc. v. Ada Cty. Bd. of Equalization*, 157 Idaho 180, 182, 335 P.3d 25, 27 (2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "Where the parties have filed cross-motions for summary judgment relying on the same facts, issues and theories, the parties effectively stipulate that there is no genuine issue of material fact that would preclude the district court from entering summary judgment." *Intermountain Forest Mgmt., Inc. v. Louisiana Pac. Corp.*, 136 Idaho 233, 235, 31 P.3d 921, 923 (2001) (citing *Davis v. Peacock*, 133 Idaho 637, 640, 991 P.2d 362, 365 (1999)). "Where, as here, the parties have filed cross motions for summary judgment, the standard of review does not change." *McFarland v. Liberty Ins. Corp.*, 164 Idaho 611, 614, 434 P.3d 215, 218 (2019).

## IV. ANALYSIS

**A. In the absence of controlling precedent to the contrary, we apply the plain language of Montana Code section 71-1-317 and determine that no deficiency action is permitted against Tuschoff which means that there are no damages associated with Land Title's alleged negligence or breach of contract.**

The primary issue is whether Montana's anti-deficiency statute is applicable in this case. If so, then under that statute's plain language First Bank is barred from pursuing a deficiency judgment against Land Title.

4

As an initial matter, the district court determined, and the parties agree, that Montana law applies to this issue. We find no reason to decline to apply Montana law to this issue. Not only is the Hotel Lincoln located in Montana, the documents governing the underlying debt each contain choice-of-law clauses which select Montana law to govern the debt. Montana has enacted the Small Tract Financing Act (MSTFA) which permits the use of trust indentures, as opposed to mortgages, for real property estates not larger than 40 acres. Mont. Code Ann. § 71-1-302. Pursuant to the MSTFA, "instead of mortgages, trust indentures (sometimes called 'deeds of trust' or 'trust deeds') are authorized." *First State Bank of Forsyth v. Chunkapura*, 734 P.2d 1203, 1205 (Mont. 1987). The trust indentures "have the effect of transferring the title of the borrower to a private trustee to be held by the trustee to secure the performance of the obligation by the borrower." *Id.* As part of that provision, "[a] power of sale is by the law granted to the trustee to be exercised after a breach of the obligation for which the trust transfer is security." *Id.* (citing Mont. Code Ann. § 71-1-304(2)). The MSTFA provides for the "method whereby a trustee may foreclose a trust indenture by advertisement and sale." *Id.* (citing Mont. Code Ann. § 71-1-313). A trust indenture may also be foreclosed "at the option of the beneficiary (lender) by judicial procedure as provided by law for the foreclosure of mortgages on real property." *Id.*

Relevant to this appeal is the MSTFA's anti-deficiency provision. Montana Code section 71-1-317 is titled "Deficiency judgment not allowed" and reads as follows:

> When a trust indenture executed in conformity with this part is foreclosed by advertisement and sale, other or further action, suit, or proceedings may not be taken or judgment entered for any deficiency against the grantor or the grantor's surety, guarantor, or successor in interest, if any, on the note, bond, or other obligation secured by the trust indenture or against any other person obligated on the note, bond, or other obligation.

In this case, the parties agree that the trust indenture securing the Hotel Lincoln was foreclosed by a trustee's advertisement and sale, thus appearing to be subject to section 71-1-317. However, First Bank contends the Montana Supreme Court has limited section 71-1-317 to apply only to deeds of trust used as security for the financing of occupied, single-family residential properties, as opposed to commercial properties. Land Title, however, contends that Montana law is unclear on the issue and urges that this Court apply the plain meaning of the statute, which would disallow the possibility of any deficiency judgment.

The parties' disagreement stems from the Montana Supreme Court's decision in *First State Bank of Forsyth v. Chunkapura*, 734 P.2d 1203, 1205 (Mont. 1987). There, a lender

5

contended that if it chose to foreclose judicially as opposed to a non-judicial foreclosure, the lender was entitled to seek a deficiency judgment notwithstanding the anti-deficiency language in section 71-1-317. *Id.* at 1206. In contrast, the debtors contended that because the debt was financed under the MSTFA, no deficiency was possible regardless of a trustee's sale or judicial foreclosure. *Id.* The Montana Supreme Court stated "[i]t is certain that when a trustee conducts a foreclosure sale, a deficiency judgment is not allowed . . . ." *Id.* at 1205 (citing Mont. Code Ann. § 71-1-317). The *Chunkapura* court went on to initially hold that, "a deficiency judgment may not be allowed when trust indentures are executed in conformity with the Act, and are foreclosed by advertisement and sale, whether through the trustee or by judicial proceedings . . . ." *Id.* at 1208. It continued; "[T]o allow a deficiency judgment would be inconsistent with the provisions of the [MSTFA] . . . ." *Id.*

However, on rehearing, the Montana Supreme Court narrowed its original decision which has led to the disagreement in the present case. First, the *Chunkapura* court stated that the rationale behind its original decision was the "quid pro quo" reasoning behind the MSTFA wherein lenders give up their right to a deficiency judgment and borrowers give up the right to possession and redemption after the sale. *Id.* at 1210. The court stated, "[s]uch quid pro quo does not apply to loans made in commercial settings, nor to trust deeds secured by residential or other property which are only part of larger, more complex loans for commercial or agricultural purposes." *Id.* It went on to say its decision in *Chunkapura* "is to be considered as precedent only for trust deeds related to occupied, single family residential property." *Id.* at 1211. It then stated:

> [T]he effect of this opinion shall be prospective only except to the Chunkapuras and that deficiency judgments in *judicial foreclosures* under trust deeds which have been entered and docketed prior to the date of our opinion, and which relate to occupied, single family residential property are hereby held to be valid and legal; and that deficiency judgments under such proceedings for like property entered and docketed after the date of our opinion (March 10, 1987) are invalid and of no effect.

*Id.* at 1211 (emphasis added).

Thus, it is clear after *Chunkapura* that deeds of trust executed to secure commercial loans are not exempt from deficiency judgments following judicial foreclosure. *See id.* However, it is not clear whether the *Chunkapura* holding applies when a property is sold pursuant to a *non*-judicial foreclosure as opposed to a judicial foreclosure. Indeed, the facts in *Chunkapura* were those of a judicial foreclosure. *Id.* at 1206. And on rehearing, as noted, the *Chunkapura*

6

court stated, "the effect of this opinion shall be prospective only except to the Chunkapuras and that deficiency judgments in *judicial foreclosures* . . . ." *Id.* at 1211 (emphasis added). Thus, the parties disagree about whether a deficiency judgment can exist on a commercial loan following a non-judicial foreclosure.

In cases following *Chunkapura*, its holding has been upheld to the extent that deficiency judgments are not allowed on deeds of trust used to secure financing for occupied, single-family residential homes. *See First Fed. Sav. & Loan Ass'n of Missoula v. Anderson*, 777 P.2d 1281, 1283 (Mont. 1989) (upholding *Chunkapura* in a case involving a judicial foreclosure to the extent that deficiency judgments are not allowed on occupied, single-family residential homes); *Trustees of Washington-Idaho-Montana-Carpenters-Employers Ret. Tr. Fund v. Galleria P'ship*, 780 P.2d 608, 613 (Mont. 1989) (stating in a judicial foreclosure case that it "will limit the preclusion of deficiency judgments on deeds of trust used as security instruments in accordance with *Chunkapura*. That, of course, excludes the [appellants], who without question, executed instruments relating to a commercial loan."). However, the Montana Supreme Court has not addressed deficiency judgments in the context of a commercial loan foreclosed through a non-judicial process.

While neither the Washington courts nor the Montana Supreme Court have addressed the issue, a district court in Montana, in another one of First Bank's lawsuits against Tuschoff, recognized that a deficiency judgment may exist. Denying Parks's motion for summary judgment, the Montana district court stated that because the trust indenture was for a commercial property, rather than a single-family residence, a deficiency amount could be allowed. Although never analyzing the language of its own statute, nor Montana case law, the court then stated that whether the full credit bid or the fair market value was determinative of a deficiency was a genuine issue of material fact, and thus summary judgment was denied.

In the absence of controlling precedent, this Court applies the plain language of section 71-1-317. Both Montana and Idaho law are clear that when a statute's plain "language is clear and unambiguous, no further interpretation is necessary." *Lucas Ranch, Inc. v. Montana Dep't of Revenue*, 347 P.3d 1249, 1253 (Mont. 2015); *accord State v. Owens*, 158 Idaho 1, 3, 343 P.3d 30, 32 (2015) ("Statutory interpretation begins with the statute's plain language."). As noted above, section 71-1-317 reads as follows:

When a trust indenture executed in conformity with this part is foreclosed by advertisement and sale, other or further action, suit, or proceedings may not be taken or judgment entered for any deficiency against the grantor or the grantor's surety, guarantor, or successor in interest, if any, on the note, bond, or other obligation secured by the trust indenture or against any other person obligated on the note, bond, or other obligation.

Mont. Code Ann. § 71-1-317.

Here, there is no dispute that the trust indenture, the deed of trust on the Hotel Lincoln, was foreclosed non-judicially because it was "foreclosed by advertisement and sale." *See id.* Thus, pursuant to the plain language of 71-1-317, no further action may be taken against Tuschoff. If no deficiency can exist against Tuschoff, then First Bank subsequently has no action against Land Title because its action against Land Title exists solely based on the deficiency it claims against Tuschoff. While the Montana Supreme Court has indicated the anti-deficiency statute is not applicable in commercial transactions, as was the case here, those cases have all addressed *judicial* as opposed to *non-judicial* foreclosures. Indeed, the original *Chunkapura* opinion clearly stated "[i]t is certain that when a trustee conducts a foreclosure sale, a deficiency judgment is not allowed . . . ." 734 P.2d at 1205 (citing Mont. Code Ann. 71-1-317). Thus, because there is no controlling precedent to the contrary, no deficiency action exists against Tuschoff and subsequently Land Title under the plain language of section 71-1-317.

**B. Even if section 71-1-317 was inapplicable, summary judgment was appropriate because First Bank's negligence claim against Land Title is without merit.**

As outlined above, this case is resolved by the application of the plain language of Montana Code section 71-1-317. However, both parties urge this Court to consider the merit of First Bank's negligence claim. Although our holding rests on our analysis of Montana Code section 71-1-317, we address the quality of this claim, which was raised below, under Idaho law. While First Bank argues its negligence claim under Idaho law, Land Title argues alternatively under Idaho law and Washington law. This mirrors how the parties advanced the issues below.

We apply the "most significant relationship test" to determine the choice of law for tort actions, considering: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. *Grover v. Isom*, 137 Idaho 770, 773, 53 P.3d 821, 824 (2002) (citing *Seubert Excavators, Inc. v. Anderson Logging Co.*, 126 Idaho 648, 651, 889 P.2d 82, 85 (1995)); *see also*

8

Restatement (Second) of Conflict of Laws § 145 (1971). "Of these contacts, the most important in guiding this Court's past decisions in tort cases has been the place where the injury occurred." *Grover*, 137 Idaho at 773, 53 P.3d at 824. Once these contacts are considered, they are evaluated under the policy concerns outlined in section 6 of the Restatement. Restatement (Second) of Conflict of Laws § 6 (1971).

Below, the parties disputed factor (a) "the place where the injury occurred," and factor (d) "the place where the relationship, if any, between the parties is centered." First Bank agreed with Land Title that factor (b) and (c) support applying Idaho law because the conduct occurred in Idaho and involves an Idaho escrow agency. However, for factor (a), First Bank argued that the injury occurred in Land Title's Lewiston offices, contending that this was the location where it failed to distribute funds. First Bank also argued that the relationship between the parties was centered in Idaho because Land Title was "holding funds in Lewiston, that were to be distributed to First Bank in Montana."

Considering all the factors, we apply Idaho law. While First Bank's alleged injury is arguably felt in Montana—and this would lean towards applying Montana law—this Court's general rule about the location of the injury is better adapted for circumstances where the injury can be easily pinpointed and the jurisdiction has a greater interest in providing a system of recourse. Here, another way to describe the alleged injury is that the funds were paid to Tuschoff instead of First Bank. Thus, First Bank's injury could also be characterized as a nonoccurrence— i.e. the failure to receive funds. If a nonoccurrence can be located, this one would be in Lewiston at Land Title's offices. Regardless, factors (a) and (b), analytically speaking, both allegedly occurred in Lewiston when Land Title did not distribute funds to First Bank. This tips in favor of Idaho law. Factor (c) does not help the resolution of this issue because First Bank is incorporated in Idaho and Land Title is incorporated in Montana. Lastly, factor (d) tips, slightly, in favor of Idaho. The relationship between the parties is not really "centered" anywhere. Rather, First Bank is asserting that it is a party to an escrow agreement which was executed and carried out in Idaho.

Given this, the scales are tipped in favor of applying Idaho law. Considering the principles that guide the choice-of-laws analysis, we find no compelling reason to apply the law of another jurisdiction. Determining that a negligence action against an escrow agency is governed by the law of the state of the escrow agency does not clearly impact the needs of the

9

interstate system in an adverse manner. Idaho has a policy in favor of regulating the professional agencies within its border and has enacted laws to that effect. While other states have an interest in seeing that their denizens have recourse for injuries, they also have interest in regulating how professional agencies operate within their borders. Applying Idaho law to a negligence claim against an Idaho escrow company protects justified expectations. The certainty, predictability, and uniformity of results are also maintained because both companies and clients understand the applicable law. Thus, applying Idaho law aids in the determination and application of the law.

In Idaho, negligence consists of four elements: "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage. *Johnson v. Wal-Mart Stores, Inc.*, 164 Idaho 53, 56, 423 P.3d 1005, 1008 (2018) (citing *Shea v. Kevic Corp.*, 156 Idaho 540, 548, 328 P.3d 520, 528 (2014)).

"No liability exists under the law of torts unless the person from whom relief is sought owed a duty to the allegedly injured party." *Baccus v. Ameripride Services, Inc.*, 145 Idaho 346, 349, 179 P.3d 309, 312 (2008) (citation omitted). "Ordinarily, there is no affirmative duty to act, assist, or protect someone else." *Id*. at 350, 179 P.3d at 313 (citation omitted). There are two exceptions to this rule: a special relationship or an assumed duty based on an undertaking. *Id.*

First Bank alleges both that it had a special relationship with Land Title through Tuschoff's assignment and that Land Title undertook the duty to handle the escrow account.

However, "this Court has [also] adhered to a general rule prohibiting the recovery of purely economic losses in all negligence actions." *Duffin v. Idaho Crop Improvement Ass'n*, 126 Idaho 1002, 1007, 895 P.2d 1195, 1200 (1994) (citing *Tusch Enters. v. Coffin*, 113 Idaho 37, 41, 740 P.2d 1022, 1026 (1987)). There are only three exceptions to this rule: when the economic loss is "parasitic to an injury to person or property"; where "unique circumstances require a different allocation of the risk'" or "in cases involving a 'special relationship' between the parties." *Id.* at 1007–08, 895 P.2d at 1200–01.

> The term "special relationship," . . . refers to those situations where the relationship between the parties is such that it would be equitable to impose such a duty. In other words, there is an extremely limited group of cases where the law of negligence extends its protections to a party's economic interest.

*Id.* at 1008, 895 P.2d at 1201.

10

Here, the loss is purely economic. When the bowling alley was sold to Banana Belt and Land Title received the funds to pay off the Schwab/Tuschoff note, Land Title disbursed the funds directly to Tuschoff rather than disbursing the funds to First Bank. And First Bank initiated this litigation to recover that financial loss. The loss is not connected to an injury to a person or property. There are no unique or compelling circumstances requiring a different allocation of the risk, nor is there a special relationship between the parties. Land Title was holding the note and deed of trust in escrow for Tuschoff. Although Tuschoff later assigned his interest in the note and deed to First Bank, First Bank and Land Title did not themselves have any relationship. Land Title's holding of the escrow account was a contractual relationship between Land Title and Tuschoff. Without any evidence of an agreement extending that contractual relationship to assignees (which does not appear in the record), or any case requiring such an extension, the contractual relationship does not extend to First Bank.

Thus, we conclude that First Bank's economic loss is not recoverable in tort. First Bank's arguments on this point are without merit.

## C. Neither party is entitled to attorney's fees on appeal.

Both parties seek attorney's fees on appeal.

First Bank cites to Idaho Code sections 12-121, 12-120(3), Idaho Appellate Rule 40, and the "when justice so requires" standard articulated in *Hoffer v. Shappard*, 160 Idaho 868, 883, 380 P.3d 681, 696 (2016). In *Hoffer*, this Court decided that Idaho Rule of Civil Procedure 54(e)(1), which interpreted Idaho Code section 12-121 to allow attorney fees in civil cases "brought, pursued or defended frivolously, unreasonably, or without foundation," was no longer applicable. 160 Idaho at 882–83, 380 P.3d at 695–96. The Court looked instead to an uncodified section of Idaho law which declared that "prevailing parties in civil litigation have the right to be made whole for attorney fees they have incurred 'when justice so requires.'" *Id.* at 883, 380 P.3d at 676 (quoting 1987 Idaho Sess. Laws 555). In response to *Hoffer*, the Idaho Legislature amended Idaho Code section 12-121 to provide, "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably, or without foundation." I.C. § 12-121; 2017 Idaho Sess. Laws 75–76. Therefore, First Bank's reliance on the "when justice so requires" standard was inappropriate. In any event, First Bank is not the prevailing party on appeal, and therefore is not entitled to attorney fees on appeal.

11

Land Title also cites to Idaho Code sections 12-121, 12-120(3), Idaho Appellate Rule 40 in support of its request for fees.

Pursuant to section 12-121, this Court, in any civil action, may award reasonable attorney fees to the prevailing party. I.C. § 12-121; *Doe v. Doe (2016-7)*, 161 Idaho 67, 79, 383 P.3d 1237, 1249 (2016). "This Court has held that attorney fees can be awarded on appeal under Idaho Code section 12-121 'only if the appeal was brought or defended frivolously, unreasonably, or without foundation.'" *Id.* (citation omitted). However, "[f]ees will generally not be awarded for arguments that are based on a good faith legal argument." *Easterling v. Kendall*, 159 Idaho 902, 918, 367 P.3d 1214, 1230 (2016). Here, given the uncertain state of Montana law on deficiency actions, we cannot say that First Bank's appeal is not based on a good faith legal argument. We decline to award fees under section 12-121.

A more difficult question is posed by whether Land Title is entitled to attorney's fees under section 12-120(3), which provides:

> In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.

I.C. 12-120(3). "Under this statute, when a commercial transaction comprises the gravamen of a lawsuit, the prevailing party shall be awarded attorney fees." *Kugler v. Nelson*, 160 Idaho 408, 416, 374 P.3d 571, 579 (2016) (citation omitted). "All transactions other than those for personal or household purposes are considered commercial transactions." *Id.* (quoting *Carrillo v. Boise Tire Co., Inc.*, 152 Idaho 741, 755, 274 P.3d 1256, 1270 (2012)). "In order for a transaction to be commercial, each party to the transaction must enter the transaction for a commercial purpose." *Id.* "The commercial transaction must be integral to the claim and constitute a basis on which the party is attempting to recover." *Id.* (quoting *Am. Bank v. BRN Dev., Inc.*, 159 Idaho 201, 208, 358 P.3d 762, 769 (2015)). Section 12-120(3) "compels an award of attorney fees to the prevailing party to recover on a commercial transaction." *Troupis v. Summer*, 148 Idaho 77, 81, 218 P.3d 1138, 1142 (2009).

Here, both parties requested fees pursuant to section 12-120(3). Thus, both parties appear to agree that the gravamen of this lawsuit was a commercial transaction. However, this agreement does not automatically justify an award under the statute. "A prevailing party may rely on I.C. § 12–120(3) if pled by another party for recovery of attorney fees *if it is warranted*

*under the statute.*" *Great Plains Equip., Inc. v. Nw. Pipeline Corp*., 136 Idaho 466, 471, 36 P.3d 218, 223 (2001) (emphasis added). A prevailing party may be awarded attorney's fees under section 12-120(3) in circumstances where a contract or commercial transaction was only alleged by the opposing party, but never actually existed. *See Intermountain Real Properties, LLC v. Draw, LLC*, 155 Idaho 313, 320, 311 P.3d 734, 741 (2013) ("[W]hen a plaintiff alleges a commercial contract exists and the defendant successfully defends by showing that the commercial contract never existed, the court awards the defendant attorney fees."); *Garner v. Povey*, 151 Idaho 462, 469, 259 P.3d 608, 615 (2011) (noting that a party may "recover under the commercial transaction prong of I.C. § 12–120(3) where the opposing party has alleged a commercial transaction as the basis of his claim" regardless of whether a commercial event occurred). However, the alleged contract or commercial transaction must still have been between the parties. *See Printcraft Press, Inc. v. Sunnyside Park Utilities, Inc.*, 153 Idaho 440, 461, 283 P.3d 757, 778 (2012) (observing that "only the parties to the commercial transaction are entitled to attorney fees under I.C. § 12–120(3)."). This inquiry is conducted on a claim-by-claim basis. *See Sims v. Jacobson*, 157 Idaho 980, 342 P.3d 907, 912 (2015) ("When various statutory and common law claims are separable, a court should bifurcate the claims and award fees pursuant to § 12–120(3) only on the commercial transaction.") (quoting *Willie v. Bd. of Trs.*, 138 Idaho 131, 136, 59 P.3d 302, 307 (2002)).

In this case, First Bank alleged both a contract claim based on a third-party-beneficiary rationale and a negligence claim. Under both theories, First Bank alleges that Land Title was required through its agreement with another party to disburse funds to First Bank as the holder of the note in question. Under its complaint, First Bank alleges that it was a third-party beneficiary to the escrow agreement between Land Title, the Tuschoffs, and the Schwabs, and therefore entitled to damages as the result of Land Title's failure to meet its obligations to disburse funds payable under Tuschoff's note, which First Bank now holds due to an assignment by Tuschoff. Under the negligence theory, First Bank contends that Land Title had a duty to determine the status of Tuschoff's note. Had Land Title determined that obligation, it would have disbursed funds to First Bank as the holder of the note. As a consequence, even if First Bank had prevailed on either of these theories, the commercial transaction or contract was not between First Bank and Land Title. Thus, attorney's fees cannot be awarded under section 12-120(3) for either claim.

13

While both parties advance section 12-120(3) on appeal, we elect to briefly address whether Idaho law is the appropriate authority for attorney's fees in this case. Unlike jurisdictional rules, courts are not required to raise conflict-of-law issues *sua sponte*. *See, e.g.*, *Porter Casino Resort, Inc. v. Georgia Gaming Inv.*, LLC, No. 18-CV-2231-SHM-DKV, 2018 WL 4558999, at *3 (W.D. Tenn. Sept. 21, 2018) (declining to raise a conflict-of-law issue *sua sponte*); *GBJ Corp. v. E. Ohio Paving Co.*, 139 F.3d 1080, 1085 (6th Cir. 1998) (finding courts need not analyze choice  of law questions *sua sponte*). However, given that this case required *dépeçage*, we find it prudent to conduct an analysis here.

First, we determine that section 12-120(3) is a substantive law subject to a choice-of-law analysis. This Court has characterized statutes that mandate attorney's fees as substantive law. *See Griggs v. Nash*, 116 Idaho 228, 235, 775 P.2d 120, 127 (1989). Since section 12-120(3) is a mandatory fee award, it follows that it is a substantive statute. *Id.* This Court has also endorsed language that likened section 12-120(3) to a contractual provision, reasoning that the statute acts like a term inserted into every commercial transaction. *Id.* ("The automatic nature of an award under I.C. § 12–120 makes it, in effect, an adjunct to the underlying commercial agreement between the parties.") (quoting *DeWils Interiors, Inc. v. Dines*, 106 Idaho 288, 293, 678 P.2d 80, 85 (1984)).

Given the contractual nature of section 12-120(3), we again apply the "most significant relation test" to consider: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) of Conflicts of Laws § 188 (1971). "[B]ecause parties to a contract are likely to give advance thought to the legal consequences of their actions, the policies of protecting justified expectations and increasing the predictability and uniformity of result take on greater importance in contracts cases." *Seubert Excavators, Inc. v. Anderson Logging Co.*, 126 Idaho 648, 652, 889 P.2d 82, 86 (1995)

As alleged, First Bank claimed it was a third party beneficiary to the escrow agreement between First American and Land Title because it was the holder of the  collateral assignment. Conceptually, an assignment is a transfer of rights or property from one person to another. 6 Am.Jur.2d Assignment § 1 (1999); *see also* Black's Law Dictionary (11th ed. 2019) (defining "assignment" as "[t]he transfer of rights or property."). Under this formulation, the underlying

14

contract or "commercial transaction" is the escrow agreement. First Bank's claims all revolve around Land Title's performance of that agreement.

Applying the factors to the escrow agreement supports applying section 12-120(3) in this case. The agreement was signed in Idaho. While the record does not disclose where the negotiations for the escrow agreement occurred, it's likely that since that all the parties were from the Lewiston/Clarkston area, the negotiations occurred in Washington or Idaho. First Bank alleges that the disbursement should have crossed state lines to Montana. The subject matter of the contract was the Note, which was held in escrow in Lewiston. The two parties to the escrow agreement were the Tuschoffs (OR & WA) and the Schwabs (ID & WA). As alleged by First Bank, the agreement became between First Bank (MT) and Schwabs (ID & WA) with the assignment.

Considering these factors, no jurisdiction clearly has the most significant relationship with the contract. However, we have stated that resolution of conflict of laws issues are aided by remembering that the

> choice-of-law process involves not the mechanical jurisdiction-selecting rules of the first restatement but rather a realistic inquiry into the relationship of various laws to the particular issue to be decided. The contacts of the transactions and of the parties with various jurisdictions are weighed only as they are significant for the purposes of the laws involved.

*Rungee v. Allied Van Lines, Inc.*, 92 Idaho 718, 723, 449 P.2d 378, 383 (1968). When this Court explained that section 12-120(3) was a substantive statute, we quoted with approval the Court of Appeals' description of the policy of the statute:

> The parties are abjured by the statute to evaluate carefully the merits of their claims or defenses in the commercial dispute. When deciding whether to litigate, each party must weigh the potential benefits of prevailing against the potential costs of losing. There is a direct relationship between a party's decision to litigate a commercial dispute and the benefits or costs which flow from that decision.

*Griggs v. Nash*, 116 Idaho 228, 235, 775 P.2d 120, 127 (1989) (quoting *DeWils Interiors, Inc. v. Dines*, 106 Idaho 288, 293, 678 P.2d 80, 85 (1984)). When Land Title was selected as the escrow agent, the original parties did so understanding that Idaho law would apply to the agreement. Given this, when First Bank decided to sue based on the escrow agreement, it was "abjured by the statute to evaluate carefully the merits of their claims or defenses . . . ." *Id.* To be sure, other jurisdictions have interests in this case. But it is reasonable to impute the Idaho Legislature's

15

policy choice to First Bank's decision to file suit in an Idaho court alleging that an Idaho escrow agreement was breached, or executed negligently, in Idaho.

## V.    CONCLUSION

The district court's judgment is affirmed. Costs to Land Title.

Justices BRODY, BEVAN, STEGNER, and MOELLER **CONCUR**.